No. 85-594

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

STATE OF MONTANA, ex rel., DEERE
& COMPANY, and ROBERT L. CAMPBELL,

    Relator,

    -vs-

THE DISTRICT COURT OF THE FIFTH
JUDICIAL DISTRICT OF THE STATE OF
MONTANA, IN AND FOR THE COUNTY OF
BEAVERHEAD, THE HONORABLE FRANK M.
DAVIS, presiding District Judge,

        Respondents,
    and

WADE HANSEN, d/b/a WADE'S BACKHOE
SERVICE,
        Real Party in Interest.

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Relator:

        Moulton, Bellingham, Longo & Mather; Brent R. Cromley
        argued for Deere & Co, Billings, Montana
        Schulz, Davis & Warren, Dillon, Montana
        Burgess, Joyce & Whelan; Thomas F. Joyce argued for
        Campbell, Butte, Montana

    For Respondent:

        Poore, Roth & Robinson; Gary L. Walton; Brendon J.
        Rohan argued for Wade Hanson, Butte, Montana
        Hon. Frank M. Davis, District Judge, Dillon, Montana

    For Amicus Curiae:

        Corette, Smith, Pohlman & Allen;    Marshall L. Mick-
        elson, Butte, Montana
        Kevin Q. Davis for Asbestos Claims Facility, Portland,
        Oregon
        David R. Black for Burlington Northern, Salt Lake City,
        Utah
        Moore, Rice, O'Connell & Refling;    Kathy Cullen,
        Bozeman, Montana

                        Submitted: August 7, 1986
                        Decided: December 19, 1986

Filed: DEC 19 1986

                    _____
                                Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

In this original proceeding in this Court, relators Deere & Company and Robert L. Campbell make application for a writ of supervisory control directed to the District Court, Fifth Judicial District, Beaverhead County, to grant Deere's motion for summary judgment which the District Court had denied. We determine that the writ should issue.

The principal issue we decide here is that a joint tortfeasor who settles with the claimant before judgment on the claim is entered in a district court is not subject to claims for contribution or indemnity from the nonsettling joint tortfeasors. We further hold that the claim of the plaintiff against the remaining tortfeasors is to be reduced by a dollar credit in the amount of consideration paid by the settling tortfeasor, and not by a percentage amount proportional to the degree of fault of the settling tortfeasor.

In May, 1982, plaintiff Robert L. Campbell was working for Beaverhead Irrigation Company installing an irrigation system. As Campbell was helping to move a mired dump truck, a bulldozer manufactured by Deere & Company backed into him. The bulldozer was operated by an employee of Wade's Backhoe, Jim Lott.

In April, 1983, Campbell filed suit for his injuries against Wade's Backhoe and Deere & Company. In May, 1983, Campbell and Deere reached a settlement agreement whereby Deere paid plaintiff $25,000 and Campbell released Deere from all claims. Campbell also agreed in the release to indemnify Deere for any amount it might be required to pay to a joint

tortfeasor thereafter. Campbell reserved in the release his claim against Wade's Backhoe.

The District Court then dismissed Campbell's action against Deere with prejudice in May, 1983, pursuant to stipulation, leaving Wade's Backhoe as the sole defendant.

In March, 1984, Wade's Backhoe filed a third party complaint against Deere for indemnity and contribution because of alleged negligence and strict liability.

In April, 1984, Deere filed an answer which generally denied the third party complaint. In October, 1985, Deere filed a motion to amend its answer to include the defense of release. At the same time, Deere filed a motion for summary judgment relying on the release of Deere by plaintiff Campbell. Deere also argued that it had not been properly brought into the action under § 27-1-703, MCA.

In November, 1985, the District Court denied Deere's motion to amend its answer to include the affirmative defense of release. The District Court also denied Deere's motion for summary judgment.

Thereafter, Deere and Campbell, as relators, filed an application in this Court in an original proceeding to procure a writ of supervisory control directed to the District Court. We ordered a response and set up a briefing schedule. We have received such response from Wade's Backhoe, and have the benefit of briefs from amici curiae as follows:

The Asbestos Claims Facility in support of relators; a brief by the law firm of Moore, Rice, O'Connell and Refling in support of relators; a brief of Burlington Northern Railroad advocating adoption of a rule under which the plaintiff's recovery against the nonsettling tortfeasor is

reduced by the equitable percentage of negligence of the settling tortfeasor or the amount paid, whichever is greater; and a brief from the law firm of Corette, Smith, Pohlmann & Allen advocating a percentage reduction of the plaintiff's claim proportional to the degree of fault of the settling joint tortfeasor.

We identify the issues to be determined in this cause as follows:

1. (a) Whether defendant Wade's Backhoe can bring an action for contribution against a joint tortfeasor who settled with the plaintiff and obtained a release;

(b) and if not, what effect should the settlement have upon the liability of the nonsettling tortfeasor.

2. Whether the defendant Wade's Backhoe's claim for indemnity can defeat Deere's motion for summary judgment.

3. Whether a writ of supervisory control should be granted.

4. Whether a denial of indemnity or contribution to Wade's Backhoe is a constitutional violation.

5. Whether Wade's Backhoe followed the correct procedures against Deere & Company in its claims for contribution or indemnity.

I.

We discuss first the effect of a prejudgment settlement by one or more joint tortfeasors with a plaintiff on the rights to contribution or indemnity of the remaining nonsettling joint tortfeasors.

This issue is the natural outgrowth of our decision in Consolidated Freightways Corporation of Delaware v. Osier (1979), 185 Mont. 439, 605 P.2d 1076 and the subsequent amendment by the Legislature of §§ 27-1-702 and -703, MCA.

- 4 -

Useful to this discussion would be a thumbnail review of the growth and development of the law on the subject of contribution between joint tortfeasors.

A starting point is that a non-negligent plaintiff could and still can recover his damages against any of several concurrently negligent tortfeasors who proximately caused his injuries [we leave aside from this discussion the development of legal cause vis-a-vis proximate cause]. The non-negligent injured plaintiff could sue one or more or all of the concurrent tortfeasors jointly or separately, and could recover against one or all. Black v. Martin (1930), 88 Mont. 256, 265, 292 P. 577, 580.

No right of contribution to pay the non-negligent plaintiff's damages existed among joint tortfeasors against whom plaintiff obtained judgment. Panasuk v. Seaton (D.C. Mont. 1965), 277 F.Supp. 979; Consolidated Freightways, supra, 185 Mont. 442, 605 P.2d 1078. No right of contribution existed between tortfeasors against whom judgment had been obtained and any unsued tortfeasors.

Contributory negligence, however, even in the slightest degree, barred a plaintiff prior to 1975 from recovery for his injuries from any tortfeasor, joint or several. Sztaba v. Great Northern Railway Company (1966), 147 Mont. 185, 411 P.2d 379.

The harshness of the contributory negligence rule was abated when the Montana Legislature adopted the comparative negligence statute in 1975. Section 58-607.1, R.C.M. (1947) [later § 27-1-702, MCA]. That statute stated:

> Contributory negligence--when bars recovery. Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such

negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering.

In 1977, the Legislature adopted a right of contribution between joint tortfeasors. Section 58-607.2, R.C.M. (1947) [later § 27-1-703, MCA]. That statute reads:

Multiple defendants jointly and severally liable--right of contribution. (1) Whenever the comparative negligence of the parties in any action is an issue and recovery is allowed against more than one party, each such party is jointly and severally liable for the amount awarded to the claimant but has the right of contribution from any other party from against whom recovery is allowed. Contributions shall be proportional to the negligence of the parties against whom recovery is allowed.

(2) If for any reason all or part of the contribution from a party liable for contribution cannot be obtained, each of the other parties against whom recovery is allowed is liable to contribute a proportional part of the unpaid portion of the noncontributing party's share and may obtain judgment in a pending or subsequent action for contribution from the non-contributing party.

Such was the state of the law in Montana when this Court decided Consolidated Freightways, supra, 185 Mont. 439, 605 P.2d 1076. Consolidated Freightways came to us on a certified question from the Federal District Court as to whether a tortfeasor who had been sued had a cause of action for contribution against a joint tortfeasor who had not been joined in the suit by the plaintiff. The facts in Consolidated Freightways were that June Osier, a passenger in a Plymouth automobile was injured in a collision between the Plymouth and a tractor-double-trailer unit operated by Consolidated. June Osier sued Consolidated, but did not name the driver of her car, her mother, Margaret Collins, as a co-defendant. Consolidated sought to bring the driver of the Plymouth, Margaret Collins, into the action as a third party

defendant on a claim of contribution between joint tortfeasors. The question we had to resolve was whether under the statutes foregoing, Consolidated had any right of contribution from Margaret Collins, since there was not otherwise a common law right of contribution between joint tortfeasors.

The right of Consolidated to contribution from Margaret Collins had to be found, if it existed, in the provisions of § 27-1-703 above (§ 58-607.2, R.C.M. (1947)). We held that on its face the statute applied only to cases where comparative negligence was an issue and that no right of contribution accrued under the statute when a tortfeasor was sued by a non-negligent complainant. We further held that even in comparative negligence cases, under § 27-1-703 contribution applied only to those defendants against whom judgment had been recovered by the plaintiff. Part of the reason for our decision in that regard was the action of the Legislature in 1977, when it was considering the bill that eventually became § 27-1-703, MCA, in refusing at the same time to provide for the joinder of any party whose negligence might have contributed to the damages claimed by a plaintiff.

In 1981, the Legislature, obviously grappling with our ruling in Consolidated Freightways, moved to amend § 27-1-703 (formerly § 58-607.2, R.C.M. (1947)). As amended by the Legislature in 1981, § 27-1-703, MCA, now reads:

> Multiple defendants jointly and severally liable--right of contribution. (1) Whenever the negligence of any party in any action is an issue, each party against whom recovery may be allowed is jointly and severally liable for the amount that may be awarded to the claimant but has the right of contribution from any other person whose negligence may have contributed as a proximate cause to the injury complained of.

- 7 -

(2) On motion of any party against whom a claim is asserted for negligence resulting in death or injury to person or property, any other person whose negligence may have contributed as a proximate cause to the injury complained of may be joined as an additional party to the action. Whenever more than one person is found to have contributed as a proximate cause to the injury complained of, the trier of fact shall apportion the degree of fault among such persons. Contribution shall be proportional to the negligence of the parties against whom recovery is allowed. Nothing contained in this section shall make any party indispensable pursuant to Rule 19, M.R.Civ.P.

(3) If for any reason all or part of the contribution from a party liable for contribution cannot be obtained, each of the other parties against whom recovery is allowed is liable to contribute a proportional part of the unpaid portion of the noncontributing party's share and may obtain judgment in a pending or subsequent action for contribution from the noncontributing party.

The amendment in 1981 of § 27-1-703 has three principal effects:

(1) While preserving joint and several liability for plaintiff's recovery, it provides a right of contribution between joint or concurrent tortfeasors whenever the negligence of _any_ _party_ is an issue, and not just when comparative negligence is an issue; (2) it allows the joinder of concurrent or joint tortfeasors who are unsued as additional parties to the action; and, (3) it may be said additionally that § 27-1-703 allows contribution between joint tortfeasors on the basis of comparative fault (a different concept from comparative negligence).

The 1981 amendment of § 27-1-703, MCA, is in derogation of the common law as we pronounced it in Consolidated Freightways. Though in derogation of the common law, the statute is to be liberally construed with a view to effect its object and to promote justice. Section 1-2-103, MCA. Consolidated Freightways, however, was concerned with an

- 8 -

unsued defendant. The case at bar presents a different facet of the problem. Deere & Company was sued by the plaintiff Campbell as a co-defendant with Wade's Backhoe. In the course of litigation, Deere & Company has entered into a compromise settlement with the plaintiff, leaving the case open as to Wade's Backhoe. Deere & Company has been dismissed from the action. Wade's Backhoe seeks to bring Deere & Company back into the litigation by means of a third party complaint for contribution or indemnity.

Once more a thumbnail review of the judicial history in our state of the effect of a release by the plaintiff before judgment of one or more joint tortfeasors as to the remaining joint tortfeasors is necessary. (The term "joint tortfeasor" in this Opinion includes the term "concurrent tortfeasor.")

Originally it was assumed that the release of one joint tortfeasor by the plaintiff operated as a release of all joint tortfeasors:

> All the courts agree that, if consideration paid by one tortfeasor for the release is full compensation for the injury, the other tortfeasor is discharged; beyond that there is disagreement. (Citing authority.) Upon the basis that for the one injury the injured party has but one "cause of action" arose the ancient rule that, where there is a joint cause of action against two or more persons, a discharge as against one of them operates as a discharge to all: "the rule of law that a release which discharges the liability of one joint tortfeasor releases the others seems to be based upon the nature of their liability, which is one and indivisible and is necessarily destroyed by the discharge of one." (Citing authority.) To this doctrine many courts of this country give assent; many adhere to it in the face of a written stipulation that the discharge of one tortfeasor shall not release the other. The reason given is that since there is but a single injury, there can be but one satisfaction, that the release implies satisfaction; hence, another suit is repugnant thereto.

Black v. Martin, supra, 88 Mont. at 266, 292 P. at 580.

In Black v. Martin, supra, plaintiff sustained injuries through the concurrent negligence of three persons, and entered into a written agreement with two of them, whereby in consideration of a given amount she discharged them from any liability on account of the accident, but reserved her right to proceed against the third. This Court held that the reservation of right negated the idea that she had received more than partial satisfaction and was free to maintain her action against the third party for the remaining satisfaction to which she deemed herself entitled. Even so, following Black v. Martin, this Court continued to hold that the release of one joint tortfeasor operated to discharge all others unless the release instrument specifically reserved the right to proceed against the others. McCloskey v. Porter (1973), 161 Mont. 307, 506 P.2d 845; Beedle v. Carolan (1944), 115 Mont. 587, 148 P.2d 559; Lisoki v. Anderson (1941), 112 Mont. 112, 112 P.2d 1055. However, in Kussler v. Burlington Northern, Inc. (1980), 186 Mont. 82, 606 P.2d 520, we adopted the rule of the Restatement (Second) of Torts, § 885 (1985) to the effect that the release of one joint tortfeasor is not a release of any other joint tortfeasors unless the document is intended to release the other tortfeasors, or the payment is full compensation, or the release expressly so provides. Kussler held that parole evidence as to the intent of the parties executing the release was admissible to determine if the plaintiff reserved his action against the remaining joint tortfeasors.

In the case at bar then, following Kussler, there can be no doubt that as between the plaintiff Campbell and Deere & Company, the latter defendant is completely exonerated from any further liability for damages to Campbell. If therefore,

- 10 -

following Deere's compromise settlement with Campbell, Wade's Backhoe can bring Deere & Company back into the action on a theory of contribution between joint tortfeasors, the finality of Deere's compromise settlement is in serious question.

No clear answer to this issue is to be found from examination of the amended statute itself (a not unusual circumstance when the legislature changes established precepts of common law). Wade's Backhoe contends that it has a right to assert contribution against Deere on the basis of the language in amended § 27-1-703(2), MCA, that "any other person whose negligence may have contributed as a proximate cause to the injury complained of may be joined as an additional party to the action." Deere, on the other hand, contends that contribution from it is not permissible because "contribution shall be proportional to the negligence of the parties against whom recovery is allowed," and recovery by Campbell cannot now be allowed against Deere. Wade's Backhoe additionally contends that it now has a statutory right of contribution from Deere which is constitutionally guaranteed under the right of access to the courts clause of the State Constitution (Art. II, § 16); and that denying Wade's Backhoe a right of contribution here opens the door to collusion between a plaintiff and a joint tortfeasor who in equity ought to bear more of the plaintiff's damages than the compromise calls for. Deere contends that the law favors compromise, that the danger of such collusion is remote, and that the amendment by the Legislature in 1981 of § 27-1-703, MCA, was not intended to preclude prejudgment settlements by one or more joint tortfeasors such as the case at bar presents.

We are not helped to determine this issue by looking to the decisions of sister states. The results are contradictory, depending in some instances upon statutory provisions in the respective states which dictate the results. In Montana, there is but one statute on the subject, the amended § 27-1-703, MCA, and from it we determine that a joint tortfeasor who settles with the claimant before judgment on the claim is entered in a district court is not subject to claims for contribution or indemnity from the non-settling joint tortfeasors against whom judgment may be rendered. Even though the amended section does give a sued joint tortfeasor the right to bring in other joint tortfeasors as defendants in order to insure contribution, and even though the section states that the trier of fact is to determine the degree of negligence among each of the joint tortfeasors, the right of contribution under the amended statute is "proportional to the negligence of the parties against whom recovery is allowed." Clearly that statutory language excludes a party against whom recovery is not allowed, e.g. a tortfeasor who has previously settled.

Consequently, under amended § 27-1-703, there is no right of contribution under Montana law in favor of a joint tortfeasor or tortfeasors against whom judgment for the plaintiff is entered from other joint tortfeasors who have settled with the plaintiff prior to judgment. The judicial tenets that the law favors compromise and that a compromising party ought to be able to buy his peace with finality override the seeming unfairness to non-settling parties who did not participate in the compromise nor control its direction; this because the non-settling defendant or

defendants, by virtue of the judgment rendered against them, have been found by the trier of fact to be jointly and severally liable for the plaintiff's injuries under § 27-1-703(1), MCA.

We, having reached that conclusion, the next question presented is what effect should the settlement by the settling tortfeasor have upon the liability to the plaintiff of the non-settling tortfeasor.

It has been the law in Montana that such a pre-judgment settlement reduces the liability of the non-settling defendants pro tanto only.

> An instrument, qualified as is the one in suit, even if it be termed a "release" shows on its face that it was not the intention of the parties to destroy the injured person's right of action against the other tortfeasors, and negatives the idea that the injured person has received more than part satisfaction. Such an instrument is to be considered according to its intention. It releases the tortfeasor to whom it is executed as if it were in fact an express agreement not to sue, and to that extent releases the other tortfeasors pro tanto only.
>
> . . .
>
> As each tortfeasor is liable for the entire damage, if one sees fit to secure acquittance for himself by compromise with the injured person, he does no wrong to those who are jointly liable with him. How can they complain if he has paid part of the damage? They are not prejudiced by the settlement, but on the contrary are benefited, for each is entitled to have the amount of any judgment rendered against him reduced by the amount paid by his "cotort-feasor" (Citing authority.)
>
> The law favors compromises. This is especially true in tort actions, not only because they relieve the labors of the courts, and avoid expense, but also because, where the parties agree between themselves upon a settlement of the claim, the result reached is frequently a more equitable adjustment than is possible to be had in a court of law.

Black v. Martin, supra, 88 Mont. at 267-269, 292 P. at 581.

More recent support of this rule came from this Court in Azure v. City of Billings (1979), 182 Mont. 234, 596 P.2d 460. There we said:

> If liability is joint and several the plaintiff is entitled to only one recovery. In that event deduction of an amount already paid by a joint tortfeasor is proper.

182 Mont. 247-248, 596 P.2d 468. See, Benner v. B. F. Goodrich (1967), 150 Mont. 97, 430 P.2d 648.

In this case counsel for Wade's Backhoe contends that § 27-1-703(2), MCA, now provides a method to determine the comparative fault of all joint tortfeasors under which "the trier of fact shall apportion the degree of fault among such persons." Thus Wade's Backhoe argues that even though Deere & Company is no longer liable to the plaintiff by reason of a settlement, it may still be liable for contribution to Wade's Backhoe, if Deere's proportional fault, as applied to any judgment the plaintiff recovers, exceeds the $25,000 paid to the plaintiff by Deere. Burlington Northern, as amicus, contends that we should adopt a rule whereby Deere's fault would be determined by the trier of fact and Deere would be liable for its proportion of fault as applied to the eventual judgment, or to a dollar credit of $25,000 whichever should be greater.

Campbell and Deere, on the other hand, contend that nothing in the legislative history of the amendment of § 27-1-703(2), MCA, leads to the conclusion that the legislature intended to make a settling concurrent tortfeasor liable to the other joint tortfeasors up to a proportional amount of his fault as applied to the judgment, instead of a dollar credit.

In brief, Wade's Backhoe argues for a percentage determination of the eventual judgment as applied to Deere; Deere contends for a dollar credit on the amount paid in settlement to reduce plaintiff's judgment.

Between them, all counsel have provided us with an exhaustive review of the cases examining this problem and there is no dearth of authority on the subject. Our sister states are not in agreement on the subject, and the reasons for their holdings go off in all directions. Mostly their decisions are controlled by statutory provisions which direct the result for the respective courts. One state, North Dakota, has adopted a rule of percentage deduction although its statutes provide for a dollar credit. Bartels v. City of Williston (N.D. 1979), 276 N.W.2d 113.

There are two model acts addressing the issue. The first is the Uniform Contribution Among Joint Tortfeasors Act, suggested in 1957. The second is the Uniform Comparative Fault Act, promulgated in 1977. (Montana has not adopted either Act.) The Uniform Contribution Among Joint Tortfeasors Act provides that settlement with one joint tortfeasor for a covenant not to sue or execute "reduces the claim against the others to the extent of any amounts stipulated by release of covenants . . ." In other words the reduction of the claim against the remaining tortfeasors is done on a pro tanto basis. The Uniform Comparative Fault Act, on the other hand, advocates adoption of a proportionate or percent credit rule which reduces the non-settling defendant's liability by the percentage of causation allocated to the settling tortfeasor.

Among states covered by the Pacific Reporter, New Mexico, Nevada, Hawaii, Alaska, Wyoming, Colorado, and

Arizona have adopted the Uniform Contribution Among Joint Tortfeasors Act, the latter three states after the promulgation of the Uniform Comparative Fault Act. No state has yet statutorily adopted the Uniform Comparative Fault Act, but some states by judicial process have adopted the percentage deduction concept.

Apparently because of the conflict between the two model acts, the Restatement (Second) of Torts, § 886A sets forth three possible solutions for the situation where one tortfeasor pays a sum to the plaintiff and takes a release not in full satisfaction of plaintiff's damages and where the plaintiff reserves the right to proceed against the remaining defendants. The first solution would follow the Uniform Contribution Among Joint Tortfeasors Act, the third solution follows the Uniform Comparative Fault Act and the second solution follows what has been the practice in Montana:

> No. 2. The money paid and the release given in good faith extinguishes both the claim of the injured party and a claim for contribution by any other tortfeasor. However, the money paid is credited against any judgment obtained against the other tortfeasors.

The Comment of the Restatement states that the second solution is preferred by claimants and insurance companies. It is the position advocated in this case by amicus Asbestos Claims Facility.

Important to our discussion here is that the legislature in amending § 27-1-703, MCA, retained specifically the concept of joint and several liability for the amount awarded to the plaintiff, even though the plaintiff's damages could be diminished proportionately to his comparative negligence. In retaining joint and several liability, the legislature saw the wisdom of protecting even a comparatively negligent

plaintiff. Without several liability, a concurrent tortfeasor whose negligence proximately caused the plaintiff's injuries could pay plaintiff only an amount based upon the concurrent tortfeasor's proportional fault. This would leave the injured plaintiff to bear the portion of the judgment that could not be collected from another impecunious, immune, or otherwise deficiently-funded concurrent tortfeasor.

In reality, our decision on this issue is hinged upon our earlier interpretation of the statute herein that no right of contribution exists from a settling tortfeasor. It would make no sense to keep a settling concurrent tortfeasor in the action as an additional defendant or a third party defendant to determine its proportional fault for plaintiff's injuries, when the non-settling defendants have no right of contribution from the settling defendant. Contribution under § 27-1-703 is the obligation of "parties against whom recovery is allowed." Since no contribution is allowed against a settling defendant, it is pointless to keep a settling party in the action simply to determine his comparative fault when the remaining defendants are severally liable to the plaintiff.

In the light of the provisions of § 27-1-703, which appear to be unique, we determine the better practice is to follow what has long been the standard in Montana, that a plaintiff's recovery is diminished pro tanto, that is, given a dollar credit based on the consideration paid or to be paid by the settling concurrent tortfeasor. Such a holding encourages compromise, lends finality to such compromises, and keeps in force the practice which the legislature has not been shown to have intended to change.

- 17 -

Wade's Backhoe's next issue is that its claim for indemnity from Deere requires that Deere be kept in the action as a third party defendant.

In Paragraph VI of the third party complaint against Deere, Wade's Backhoe alleges:

> The dump truck became mired in boggy ground, and Jim Lott walked to where Jim Beitler and plaintiff Campbell were working to request their assistance in retrieving the dump truck. Beitler told Lott to drive Beaverhead's JD450B crawler-tractor to where the dump truck was mired, and Beitler and Campbell drove to that location separately. Lott backed the crawler-tractor near the front of the dump truck, placed the shift lever in neutral and closed the shift locking gate with the clutch depressed. At that time, plaintiff Campbell went between the two vehicles with a chain to connect them. To assist Campbell, Lott began to climb off the crawler-tractor lifting his foot from the clutch as he did so, believing the vehicle to be locked in neutral. The vehicle was actually in reverse gear, and upon action of the delayed hydraulic clutch, it lurched violently backwards. Lott immediately reseated himself and redepressed the clutch pedal, but wasn't able to do so quickly enough to prevent the tractor from striking the plaintiff Campbell.

The foregoing paragraph is the basis both for Wade's Backhoe's claim for contribution, and for indemnity. As to indemnity, it is obvious that Wade's Backhoe is relying upon the implied concept of indemnity, and not upon contractual indemnity. In the light of the allegations, Wade's Backhoe had not stated a cause for implied indemnity as a matter of law.

Wade's Backhoe argues that its negligence, if any, is at most passive, and not active, that it is not in pari delicto with Deere, and that it has been exposed to liability by the negligence of Deere, or on principles of strict liability. See, Great Northern Railway Company v. United States (D. Mont. 1960), 18 F.Supp. 690, 693. Yet the only way that Wade's Backhoe can be found liable to Campbell in this case is if the negligence of its employee, Lott,

proximately caused the injuries sustained by the plaintiff Campbell. In that situation, Wade's Backhoe is not entitled to indemnity. Repeating what we said in Consolidated Freightways, supra, 185 Mont. at 448, 605 P.2d at 1081:

> In American Home Assurance Company v. Cessna Aircraft Company (U.S.C.A. 10th 1977), 551 F.2d 804, 808, the court of appeals said "the Montana law is that when each tortfeasor is affirmatively negligent neither is entitled to indemnity." We see no need to change this settled principle of our law.

The remedies of indemnity and contribution are in theory mutually exclusive. Indemnity is an all-or-nothing proposition, representing in effect total contribution. Counsel for Wade's Backhoe has chosen to characterize the allegation in Paragraph VI of the third party complaint as constituting a claim for indemnity, but that characterization is not determinative. As the Court in Missouri Pacific Railroad Company (Missouri 1978), 566 S.W.2d 466, 471, observed:

> This is not a sensible way to fix responsibility in indemnity. It comes about by attempting to find a formula by which to excuse one of two joint or concurrent tortfeasors completely. When as a practical matter they both are to blame, the true difference between them being only a matter of degree or relativity of fault. With a little ingenuity and phrasing, negatives can be made to be either "active" or "passive" as suits the writer. For example, "driving an automobile with bad brakes" or "running through the stop sign" or "using a defective crane" might be said to be "active" negligence while "omitting maintenance of brake fluid level" or "neglecting to apply the brakes" or "failing to inspect the crane in order to discover its defectiveness" might be "passive" negligence--these are the same acts or omissions but the outcome depends not upon the facts, but upon how someone chooses to characterize them.

In this case the facts alleged by Wade's Backhoe do not constitute a claim for indemnity.

It should be clear from our discussion foregoing that we do not find a common law right of contribution or of

indemnity in favor of Wade's Backhoe. Further, because we find no common law nor statutory right to contribution or indemnity the argument of Wade's Backhoe that it has a constitutional right here is of course foreclosed.

We hold therefore that Deere & Company is entitled to a writ of supervisory control or other appropriate writ requiring the respondents to vacate the order denying Deere's motion for summary judgment in Cause No. 10061 in the District Court, and directing that summary judgment in favor of Deere & Company dismissing the third party complaint of Wade's Backhoe Service be entered forthwith.

We turn now to the other issues raised by the parties in the cause. Wade's Backhoe contended that this cause does not present a sufficient reason for the issuance of a writ of supervisory control or other appropriate writ. In view of the importance of the issue presented here such a contention is really a subissue. If we had decided to deny the application for writ without comment on the grounds that the matter could later be looked at by us on appeal, we would be foregoing an important opportunity for the instruction of the courts and counsel as to our interpretation of amended § 27-1-703, MCA, under the facts presented. In matters involving supervisory control, this Court has followed the practice of proceeding on a case-by-case basis though we are careful not to substitute the power of supervisory control for an appeal. State ex rel. Reid v. District Court (1953), 126 Mont. 489, 255 P.2d 693. Justice and judicial economy is served when, faced with a record that shows the relator is deprived of a fundamental right, we resolve the issue in favor of the relator and assume jurisdiction. State ex rel. Coburn v. Bennett (Mont. 1982), 655 P.2d 502. We have also

said that when a cause in the District Court is mired in procedural entanglements and an appeal is not an adequate remedy, we will issue a writ of supervisory control. State ex rel. Leavitt v. District Court (1977), 172 Mont. 12, 560 P.2d 517. We determine that this is an appropriate case for supervisory control and have therefore assumed jurisdiction.

Deere & Company contends that Wade's Backhoe did not in this case follow the correct procedure in filing its claim for contribution by means of third party complaint.

Technically, Deere & Company is correct in this contention. The provisions of § 27-1-703, MCA, allow bringing a concurrent tortfeasor into the action by joinder "as an additional party to the action." This apparently contemplates a motion under Rule 19, M.R.Civ.P. In this case, Wade's Backhoe sought to bring Deere & Company into the action by means of a third party claim under Rule 14, M.R.Civ.P. While the preferred method may well be to proceed under Rule 19, we see no disadvantage to any party if Rule 14 is followed, as was done in this case.

Deere & Company is entitled to a writ of supervisory control to be issued from this Court in accordance with our discussion and directions foregoing. This Opinion shall be and serve the office of such a writ, and when a copy of this Opinion signed by a majority of the members of this Court shall be filed with the Clerk of the District Court, the District Court shall forthwith act in accordance therewith.

_____
John C. Sheehy
Justice

We Concur:

_(signature)_
Chief Justice

_(signature)_ John Conway Harrison

_(signature)_

_(signature)_

_(signature)_ William E. Hunt
Justices

Mr. Justice L. C. Gulbrandson, concurring and dissenting.

For the most part, I concur with the majority opinion. I respectfully dissent from that part of the majority opinion which retains the dollar credit rule in Montana. In my view, this Court should follow the modern trend and adopt the percent credit rule.

Courts and commentators have established three alternative solutions to the issue presented here, i.e., what effect will a joint tortfeasor's out of court settlement have upon a judgment entered against a non-settling joint tortfeasor (given that the latter has no right of contribution against the former). Those alternatives are: (1) the dollar credit rule--the amount of the settlement or covenant not to sue is credited against the judgment entered against the non-settling defendant, (2) the pro rata credit rule--this rule reduces the non-settling defendant's liability on the judgment in a proportion equal to the number of settling tortfeasors divided by the total number of tortfeasors; and (3) the percent credit rule --the non-settling defendant's liability on the judgment is reduced by the percentage of causation allocated to the settling tortfeasor. As the following hypothetical example will show, the dollar credit rule can yield unjust and devastating results.

Let us suppose the following. A supplies B with a defective car which B crashes into D who is crossing a street. The defective brakes in the car are the main cause of the accident and we will assume that A is 90% negligent. However, B was slightly careless and he was 10% at fault. D settles his suit against A for $10,000. D then wins a

23

$100,000 judgment against B in a negligence action. Under the majority's dollar credit rule, the $10,000 settlement is credited against the verdict and B, who was only 10% at fault, has to pay $90,000. Under the percent credit rule, the amount of A's negligence, 90%, is credited against the judgment and B has to pay $10,000. Results of the majority's dollar credit rule include: (1) the plaintiff can insulate a settling tortfeasor from his true degree of liability by entering into a low settlement (the remaining defendant will have no right of contribution from the settling tortfeasor); and (2) the plaintiff can impose a completely disproportionate share of liability upon the remaining defendant.

Many courts criticize the dollar credit rule, and rightly so. The Texas Supreme Court stated:

> A dollar credit reduces the liability of the non-settling defendants, pro tanto, by the dollar amount of any settlement. The defendant's liability thus may fluctuate depending on the amount of a settlement to which he was not a party. This fluctuation cannot be reconciled with the policy of apportioning liability in relation to each party's responsibility, the conceptual basis of comparative causation. A dollar credit also encourages collusion by shielding plaintiffs from the effect of bad settlements while denying them the benefit of good settlements. (Emphasis added.)

Duncan v. Cessna Aircraft Co. (Tex. 1984), 665 S.W.2d 414, 430. The North Dakota Supreme Court criticized the dollar credit rule and stated, "[T]here may be serious doubt that one tort-feasor and the plaintiff could, by or through a release, impose greater liability on other joint tort-feasors not covered by the release." Bartels v. City of Williston

(N.D. 1979), 276 N.W.2d 113, 121. Similarly, the Fifth
Circuit Court of Appeals stated:

> The problems with a [dollar credit rule]
> arise from the fact that it provides no
> rational basis for allocating damages
> among the joint tortfeasors. (Citation
> omitted.) Certainly, nothing prevents a
> collusive, low settlement with a less
> solvent tortfeasor, who might even be
> largely responsible for the harm, in
> exchange for that tortfeasor's assistance
> in prosecuting a claim against the less
> responsible, more solvent joint
> tortfeasor.

Dobson v. Camden (5th Cir. 1983), 705 F.2d 759, 768, vacated
on rehearing, 725 F.2d 1003 (5th Cir. 1984). In a decision
authored by Mr. Justice William J. Brennan, Jr., now of the
United States Supreme Court, the New Jersey Supreme Court
also criticized a modified dollar credit rule.

> If the injured party is required to
> credit only the amount received in
> settlement (citation omitted) he may be
> tempted to make collusive settlements, a
> mischief incident to the denial of
> contribution which was one of the
> strongest reasons for the statutory
> change allowing a right of contribution.

Judson v. Peoples Bank & Trust Company of Westfield (N.J.
1954), 110 A.2d 24, 36.

As shown by the majority, a number of states have
statutory dollar credit rules. This is largely a result of
those states' adoption of one version or another of the
Uniform Contribution Among Tortfeasors Act which provides for
the dollar credit rule.

Section 6 of the 1977 Uniform Comparative Fault Act
(UCFA) was intended to replace § 4 (the dollar credit rule)
of the 1955 Uniform Contribution Among Tortfeasors Act in a
state (such as Montana) following the principle of
comparative fault and, as stated by the majority, the newer
Act provides for a percent credit rule rather than a dollar

credit rule. A comment to the UCFA advises those states adopting that Act that,

> A state that has adopted either of the two Uniform Contribution Among Tortfeasors Acts will of course plan to repeal it. This is also true of other statutory provisions on contribution for tortfeasors.

Uniform Comparative Fault Act § 11 comment, 12 U.L.A. 47 (Supp. 1986). A further comment to the UCFA reveals that, "[t]he 1955 Act [Uniform Contribution Among Tortfeasors Act] should be replaced by this Act in any state that adopts the comparative fault principle, and would be eventually replaced." Uniform Comparative Fault Act, prefatory note, 12 U.L.A. 38 (Supp. 1986). An observation of the Texas Supreme Court partially explains this comment. "The old dollar credit [which the Uniform Contribution Among Tortfeasors Act provides for] is considered inappropriate in jurisdictions adopting a system of comparative causation." (Emphasis added.) Duncan, 665 S.W.2d at 430, n. 10. Montana is such a jurisdiction.

The Duncan case is the most recent case in the modern trend towards adoption of the percent credit rule. The Texas Supreme Court found that the percent credit rule was consistent with Texas' comparative causation system. The court adopted the percent credit rule and stated:

> The system of comparative causation we adopt allows allocation of liability between the parties, even when the injury itself is indivisible. (Citation omitted.) Because each defendant's share can now be determined, it logically follows that each may settle just that portion of the plaintiff's suit. The settlement does not affect the amount of harm caused by the remaining defendants and likewise should not affect their liability. (Emphasis added.)

Duncan, 665 S.W.2d at 431.

Bartels, the North Dakota Supreme Court case cited above, is a leading case in the modern trend. The Bartels court adopted the percent credit rule in North Dakota notwithstanding the fact that the state legislature had statutorily enacted a dollar credit rule. The court found that the North Dakota comparative negligence statute (which is very similar to Montana's) impliedly repealed the statutory dollar credit rule. The Bartels court reasoned that when the North Dakota legislature borrowed the comparative negligence statute from Wisconsin and Minnesota, it also borrowed the Wisconsin and Minnesota courts' interpretation of that statute. Bartels followed the Wisconsin cases and construed the North Dakota comparative negligence statute as requiring the percent credit rule. See Pierringer v. Hoger (Wisc. 1963), 124 N.W.2d 106; Bielski v. Schulze (Wisc. 1962), 114 N.W.2d 105.

This Court should adopt the percent credit rule as the logical complement to our comparative negligence statute, just as Wisconsin, Minnesota and North Dakota did with respect to their comparative negligence statutes. Montana's comparative negligence statute indicates a legislative intent to apportion fault among the parties. More importantly, Montana's contribution statute, § 27-1-703, MCA, indicates a legislative intent to apportion fault among tortfeasors, whether those tortfeasors have settled or not. In pertinent part, § 27-1-703, MCA, provides, "[w]henever more than one person is found to have contributed as a proximate cause to the injury complained of, the trier of fact shall apportion the degree of fault among such persons." (Emphasis added.)

27

Significantly, that statute does not limit its application to parties but applies to persons.

In Doyle v. United States (D.C.S.C. 1977), 441 F.Supp. 701, the federal court also found that the percent credit rule was particularly consistent and compatible with a comparative fault doctrine. The court adopted the percent credit rule in a case where the settlement bars contribution and in the context of admiralty jurisprudence which has a comparative fault doctrine.

In Dobson v. Camden (5th Cir. 1983), 705 F.2d 759, vacated on rehearing, 725 F.2d 1003, (5th Cir. 1984), the Fifth Circuit Court of Appeals adopted the percent credit rule in the context of a section 1983 action. The court found that federal law was deficient on the effect of a plaintiff's settlement with one joint tortfeasor as against a later judgment against a non-settling joint tortfeasor. The court rejected the local state's dollar credit rule and reasoned that the dual policies of section 1983, compensation and deterrence, called for a percent credit rule.

Other courts have also adopted or advocated the percent credit rule. See Frey v. Snelgrove (Minn. 1978), 269 N.W.2d 918; Cartel Capital Corp. v. Fireco of New Jersey (N.J. 1980), 410 A.2d 674; Gomes v. Brodhurst (3rd Cir. 1967), 394 F.2d 465; Gustafson v. Benda (Mo. 1983), 661 S.W.2d 11 (criticizing Missouri's statutory dollar credit rule and advocating the legislative adoption of the percent credit rule). Commentators have also recommended the percent credit rule. See, e.g., Fleming, Report to the Joint Committee of the California Legislature on Tort Liability on the Problems Associated with American Motorcycle Association v. Superior Court, 30 Hastings L.J. 1464, 1498 (1979); Comment,

*Comparative Negligence, Multiple Parties, and Settlements*, 65 Cal.L.Rev. 1264 (1977).

The majority opinion rests on the conclusion that non-settling defendants should be jointly and severally liable for the judgment (less the amount of settlement) even where the plaintiff has settled with one joint tortfeasor for a sum completely inadequate as to that tortfeasor's liability. The better view is that the plaintiff, by settling with one tortfeasor, has waived his right to hold the remaining tortfeasor jointly and severally liable for the remainder of his damages. In Bartels, the North Dakota Supreme Court held that the plaintiff's right to joint and several liability was for his/her benefit and that the plaintiff waived that right as to a non-settling defendant by releasing a joint tortfeasor. Montana statutory law provides a basis for a similar holding. Section 1-3-204, MCA, states "[a]nyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." In the context of a single case, the plaintiff's right to joint and several liability is solely for his/her benefit and not for a public reason. We should follow the Bartels ruling on this point.

The majority states that:

> It would make no sense to keep a settling concurrent tortfeasor in the action as an additional defendant or a third party defendant to determine its proportional fault for plaintiff's injuries, when the non-settling defendants have no right of contribution from the settling defendant. . . . Since no contribution is allowed against a settling defendant, it is pointless to keep a settling party in the action simply to determine his comparative fault when the remaining

> defendants are severally liable to the
> plaintiff.

That statement misses the point. As shown in the preceding paragraph, the better view is that the remaining defendants should not be severally liable to the plaintiffs as plaintiffs have waived their right to that benefit. Moreover, the percent credit rule does _not_ require that the settling tortfeasor be retained as an additional defendant or third party defendant, as the majority implies.

> The issue between the plaintiff and the nonsettling defendant, which should be framed by an amendment to the pleadings, is the percentage of causal negligence, if any, of the nonsettling defendant, but such percentage of negligence can only be determined by a proper allocation of all the causal negligence, if any, of all the joint tort-feasors and of the plaintiff if contributory negligence is involved. The determination of this issue between the plaintiff and the nonsettling defendant does not require the settling defendants to remain parties because the allocation, if any, of the causal negligence to the settling tort-feasors is merely a part of the mechanics by which the percentage of causal negligence of the non settling tort feasor is determined. It makes no practical difference to the settling tort-feasors what percentage of causal negligence is allocated to them because they have bought their peace in any event.

Pierringer, 124 N.W.2d at 111-112. The Texas Supreme Court stated in Acord v. General Motors Corp. (Tex. 1984), 669 S.W.2d 111, 117, that, "[t]he settling party's liability can be determined even though the settlor is not joined. Requiring joinder of a settling tort-feasor as a party serves no useful purpose." (Citation omitted.) See also, Keeton, Torts, 28 Southwestern L.J. 1, 14 (1974),

> Failure to join an alleged settling tortfeasor neither precludes nor, arguably, should it preclude the submission of the existence or amount of his negligence. The determination of the

> existence or amount of his negligence is in no way dependent on his being a party, and there is no value in making him a formal party to the litigation except for procedural and tactical reasons on the part of claimant or defendants.

The dollar credit rule simply requires the non-settling defendant to shoulder the burden of an inadequate, low settlement entered into by the plaintiff and the settling joint tortfeasor. The better rule is the percent credit rule which requires the plaintiff to shoulder the burden of any insufficient settlement he has voluntarily entered into.

_____
Justice

31