JUSTICE NELSON
dissents.
¶39 I dissent from our decision as to Issues One, Two, and Four. I would reverse and remand for a new trial. I would not address Issues Three and Five.
¶40 Before addressing these issues, however, it is fair to point out that our Opinion does not adequately describe the so called “squeaks” that developed in the Tripps’ home as a result of the failure of the COMPLY product. Floor squeaks in a residential structure are usually considered a minor annoyance. The “squeaks” at issue here, however, were anything but. Excerpts from the trial transcript more accurately convey the substantial noise the was forced upon the Tripps in this case.
¶41 At trial, Mr. Tripp testified that the “squeaks”emanating from the floor of the walk-in closet were loud enough to wake a person who was sleeping in the adjacent bedroom. Mrs. Tripp testified “when somebody says that it’s a creak or it’s a squeak, that’s not what it is. When your dog walks over it, and you can hear it, when a forty-pound nephew or niece walks across it and asks you what - what’s wrong with the floor.” Further, Mrs. Tripp testified “[i]t’s just horrible. I’m embarrassed to have people come in. ... [I]t’s not a squeak, it’s not, you know, a little creak, it’s a noise.”
*158 ¶42 Further, our Opinion fails to mention that the Tripps sought to purchase strong and, pointedly, noise-proof flooring material because of the possibility that Mrs. Tripp could someday be confined to a 200 pound electric wheelchair because of her sixteen year struggle with rheumatoid arthritis. Our Opinion simply does not do justice to the problem that prompted the Tripps’ lawsuit against Jeld-Wen.
¶43 Turning next to our resolution of the issues, as to Issue One, I would hold that the District Court abused its discretion by refusing to allow the Tripps’ expert, Dr. Edwin Burke, to testify concerning other incidents of failure of the COMPLY product as the basis for his opinion. Our Opinion holds that the District Court did not abuse its discretion in excluding this testimony because the probative value would likely have been minimal. The District Court ruled that the witnesses’s other-incidents testimony would not be admitted because Dr. Burke had already given a reliable basis for his opinion and because of the danger of unfair prejudice, given that the testimony might improperly induce the jury into thinking that COMPLY is rampantly defective.
¶44 Our affirmance of the District Court is based on Rule 403, M.R.Evid., which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. A proper application of Rule 403, M.R.Evid., demonstrates that the District Court abused its discretion and that we have erred in upholding the court’s decision.
¶45 First, the probative value of the excluded testimony was considerable for several reasons. Most notably, this testimony was an integral part of the basis for Dr. Burke’s expert opinion. When asked why he would consider other incidents of failure of the COMPLY product in forming his opinion, Dr. Burke testified:
Well, first and foremost, I want to make certain that the reported problem is not isolated . . . that it’s not something that is only seen at this one location. And I’m interested - a person doing this type of work would be interested in knowing if - if there were other situations, that would allow for more, um, general knowledge to be gathered about - about the product, about the effects of the precipitation, or any of the other factors that could come into play here.
Additionally, the circumstances surrounding these other incidents were substantially similar to those in this case. As with the Tripps’ house, the COMPLY product used in these other instances produced “squeakjf’ floors after being exposed to weather during construction. *159 These were precisely the circumstances here. Furthermore, the excluded testimony would have assisted the jury in properly evaluating Dr. Burke’s expert opinion by providing a more complete understanding of the basis of his opinion. It is clear that Dr. Burke found these other incidents of problems with the COMPLY product to be indicative and predictive of the product’s failure when exposed to weather conditions during construction.
¶46 Second, the danger of unfair prejudice posed by this testimony was minimal because Dr. Burke’s testimony could have been adequately challenged and clarified with thorough cross-examination. The Court concludes that this testimony could “improperly induce the jury into thinking COMPLY is rampantly defective ....’’Unfortunately, it may just be that the COMPLY product is rampantly defective under the conditions at issue in this case and present in the other incidents. If so, it was the jury s prerogative to reach that conclusion based on the complete testimony of Dr. Burke. The trial court’s ruling and our resolution of this issue does not properly respect the role of cross-examination with regard to disclosure of the basis of an expert’s opinion. We have previously stated that cross-examination is the proper means by which to reveal weaknesses in the basis of an expert’s opinion. Hunsaker v. Bozeman Deaconess Found. (1978), 179 Mont. 305, 323, 588 P.2d 493, 504. Here, the jury should have been allowed to evaluate the complete basis of Dr. Burke’s opinion, and Jeld-Wen would have had the opportunity to demonstrate weaknesses therein through vigorous cross-examination.
¶47 Under Rule 403, M.R.Evid., the probative value of the excluded testimony was not substantially outweighed by the danger of unfair prejudice. Indeed, the District Court’s exclusion of this testimony severely prejudiced the Tripps because Dr. Burke’s opinion and the basis for his conclusions was such an integral part of their case. I would, therefore, hold that the District Court erred and abused its discretion in refusing to allow the testimony at issue. I would reverse and remand for a new trial.
¶48 As to Issue Two, I would hold that the District Court abused its discretion in allowing evidence of the Tripps’ settlement with Howard. We have time and time again stated that Montana law favors compromise and settlement. In State ex rel. Deere & Co. v. District Court (1986), 224 Mont. 384, 730 P.2d 396, we stated:
‘The law favors compromises. This is especially true in tort actions, not only because they relieve the labors of the courts, and avoid expense, but also because, where the parties agree between *160 themselves upon a settlement of the claim, the result reached is frequently a more equitable adjustment than is possible to be had in a court of law.”
Deere, 224 Mont. at 394, 730 P.2d at 403 (citation omitted). See also DeTienne Assocs. Ltd. Partnership v. Mont. Rail Link (1994), 264 Mont. 16, 22, 869 P.2d 258, 262.
¶49 Ostensibly, evidence of the Tripps’ settlement with Howard was admitted under the exception of Rule 408, M.R.Evid., to demonstrate bias on the part of Howard. However, the use of this evidence at trial did not serve the purpose for which it was allowed because it did not, in any logical way, tend to establish bias on the part of Howard. Rather, this evidence effectively imputed liability to Howard-precisely the result Rule 408, M.R.Evid., was designed to prevent.
¶50 The basic policy of Rule 408, M.R.Evid., is “to encourage compromises and settlement of disputes.” Tribby v. Northwestern Bank of Great Falls (1985), 217 Mont. 196, 210, 704 P.2d 409, 418. This policy is clearly violated when, as here, evidence of settlement is admitted based on pure speculation.
¶51 In order to place Jeld-Wen’s arguments and our Opinion in context, I will briefly review the pertinent facts, some of which are not included in the Court’s Opinion. In 1995, the Tripps contracted with Howard to construct their new home. Pursuant to this agreement, the COMPLY floor product was installed in the Tripps’ home. After the “squeaking” problems surfaced, the Tripps asked Howard to estimate the cost to fix the problem. In August of 1996, Howard provided an estimate of $30,829 for the repairs. In April of 1997, the Tripps brought their suit against Jeld-Wen. Jeld-Wen filed a third-party complaint against Howard, alleging that the Tripps’ damages were caused by improper installation, and requesting indemnity and contribution. Howard then filed a cross-claim against Jeld-Wen for indemnity and contribution. Subsequently, Howard’s insurance carrier settled with the Tripps for $20,000 and the District Court dismissed Howard from the lawsuit. Then, in September of 2002, when the floor problem had grown worse, Howard provided a second estimate of $98,000 for repairing the floor.
¶52 After the Tripps had settled with Howard, they moved to exclude evidence of the settlement pursuant to Rule 408, M.R.Evid., which provides in pertinent part:
Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a *161 claim which was disputed as to either validity or amount is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.... This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness ....
In its Order and Memorandum of January 26,2001, the District Court correctly ruled that evidence of the settlement was inadmissible at trial, noting that Jeld-Wen had not proposed admission of such evidence under any of the exceptions of Rule 408, M.R.Evid. At trial, however, Jeld-Wen contended that evidence of the settlement should be admissible to demonstrate bias on the part of Howard. The District Court then reversed itself and admitted, over objection, the evidence for that purpose.
¶53 The problem with the District Court’s decision is that Jeld-Wen offered no logical reason to support its contention that this evidence could show a bias on the part of Howard. In arguing for admission of the settlement, Jeld-Wen’s counsel conjectured Ttjhere could very well be some other agreements that we have not been privy to about why [Howard’s] cost to prepare [sic] has jumped some three hundred percent. . . .’’Jeld-Wen’s counsel also opined T think the jury could reasonably conclude that there was - especially - that there was some sort of a - a bias that exists with Mr. Howard, given the amount of his settlement, twenty thousand dollars, when compared to the amount of money that the Plaintiffs are now seeking.” The District Court accepted these speculations as the basis for admitting evidence of the settlement, stating Tw]ell, I know that settlement is generally precluded, but counsel makes the point - and I think it’s a good one - that something smells here.”
¶54 It appears Jeld-Wen’s counsel was speculating that Howard stood to gain something from improperly increasing his second repair estimate, or that Howard had some other conflict of interest with respect to Jeld-Wen. Had there been evidence to back up its conjectures, Jeld-Wen would have been within its rights to seek admission of the settlement. The problem is Jeld-Wen utterly failed to offer any such evidence to back up either its rank speculation or its conclusion that “the settlement agreement ... clearly explains the distinction” between the two estimates. If Jeld-Wen believed that Howard was biased because of his settlement with the Tripps, then it could have, and should have, developed that theory through discovery. Jeld-Wen did not.
*162 ¶55 Rule 408, M.R.Evid., precludes the use of settlements to prove liability. While, as noted, evidence of Howard’s settlement was ostensibly used to show bias, it was effectively used to impute liability to Howard. This is clearly demonstrated by Jeld-Wen’s repeated use of questions such as: ‘You settled a claim against you with the Tripps related to this exact issue, didn’t you?” and ‘You or someone on your behalf paid to the Tripps twenty thousand dollars to settle the issues raised in this lawsuit; yes or no?”Indeed, Jeld-Wen’s counsel’s closing argument was almost entirely devoted to placing liability for the failure of the COMPLY product on Howard.
¶56 The Tripps argue that these questions effectively attributed liability to Howard. However, our Opinion does not address that argument. Rather, this Court simply accepts Jeld-Wen’s assertion that these questions were not used to prove any issue of liability. Hence, with no analysis, our Opinion concludes that this evidence was permissible under Rule 408, M.R.Evid. This is a truly unfortunate precedent to impose on our future jurisprudence.
¶57 Additionally, even if, arguendo, evidence of the settlement was properly admitted, the District Court’s ruling allowing evidence of the amount of the settlement was clear reversible error. In Azure v. City of Billings (1979), 182 Mont. 234, 596 P.2d 460, we discussed the type of prejudice that results from placing the amount of a settlement before the jury. Among other things, we stated that allowing evidence of a settlement involving one of the parties poses a danger that “the jury will be adversely influenced by extraneous factors which will creep into the jury’s decision-making process,’’and that ‘If a settlement is disclosed to the jury, there is a danger that the jury may consider the settlement as evidence of total responsibility for the injury and the defendant’s freedom from fault.” Azure, 182 Mont. at 245, 596 P.2d at 466-67. We also cited with approval language from Degen v. Bayman (S.D. 1972), 200 N.W.2d 134, 139, that the court could ‘Visualize no circumstances where the amount involved in a release or covenant need be disclosed to the jury.”
¶58 In addressing the Tripps’ argument that admission of the amount of the settlement was improper, our Opinion adopts Jeld-Wen’s rationale, stating at ¶ 21:
The amount Howard settled for was very similar to the amount that Howard’s owner earlier had contended it would have cost to repair the floor. Because he settled at that amount, Jeld-Wen could argue that he was inconsistent when he testified to a different, much greater, repair figure. Therefore, inquiry into the *163 amount was pertinent to the credibility of the witness ....
The Court determines that $20,000 and $30,829 are Very similar” in this case, and apparently finds some significance in the fact that Howard settled for an amount that was approximately two-thirds of his original repair estimate. What this significance may be, we are not told. As far as I can see, this fact carries no significance at all in the resolution of this issue. Furthermore, it is not clear why the Court thinks such a fact justifies the conclusion that Jeld-Wen could argue Howard was inconsistent in providing two differing repair estimates. The reality of the matter is that Jeld-Wen was entitled to make that argument regardless of the settlement amount, and even if no settlement had occurred, because that argument was justified by the mere fact that the two estimates were significantly different.
¶59 Even if, as we hold, evidence of Howard’s settlement was permissible to demonstrate bias and prejudice, nonetheless the testimony should have been limited to the mere existence of the agreement and the fact that Howard might have received some benefit from the agreement. Allowing evidence of the amount of the agreement was reversible error.
¶60 Jeld-Wen utterly failed to demonstrate that evidence of the settlement would show bias on the part of Howard. Furthermore, substantial injustice resulted because the admission of the settlement imputed liability to Howard-precisely what Rule 408, M.R.Evid., was designed to prevent. Moreover, admission of the amount of the settlement was clear reversible error under our case law. I would hold that the District Court committed reversible error when it allowed evidence of Howard’s settlement agreement with the Tripps, and, in particular, evidence of the amount of the settlement. I would, accordingly, reverse and remand for a new trial on Issue Two.
¶61 Finally, I disagree with our conclusion under Issue Four, that the District Court did not err in giving Jeld-Wen’s proposed jury instruction regarding negligent misrepresentation. The Tripps’ complaint asserted claims for negligence, breach of warranty, and deceptive trade practice. No claim was made for negligent misrepresentation, and evidence of negligent misrepresentation was not introduced at trial.
¶62 We apparently determine that there is some significance in the fact that Instruction 19 (the negligent misrepresentation instruction) was grouped with Instructions 17-20, and that Instructions 17,18 and 20 only speak of negligence and not negligent misrepresentation. This conclusion begs the question: “So what?” The District Court read *164 Instruction 19 to the jury and presumably the jury studied and followed the Instruction during its deliberations. The fact that the improper instruction was buried in with other proper instructions does not mitigate the error in giving it.
¶63 Instruction 19 states that Tpjlaintiffs claim negligent misrepresentation.” That is patently untrue. The Tripps did not claim negligent misrepresentation in their complaint or at trial. Indeed, that fact was reflected in the verdict form, which included only the three claims made by the Tripps, namely: (1) negligence; (2) breach of warranty; and (3) deceptive trade practice.
¶64 Instruction 16 stated: ‘The following principles of law apply to the Plaintiffs’ negligence claim.” Instruction 17 stated:
Every person is responsible for injury to the person or property of another, caused by his or her negligence.
Negligence is the failure to use reasonable care. Negligence may consist of action or inaction. A person is negligent if he fails to act as an ordinarily prudent person would act under the circumstances.
¶65 Instruction 18 stated:
The Defendant is liable if his negligence was the cause of Plaintiffs’ damages. The Defendant’s conduct is the cause of the damage if it produced it and if the damages would not have occurred without it.
¶66 According to Instruction 19, in order to establish a claim of negligent misrepresentation the Plaintiffs had to prove that: (1) the Defendant made a representation as to a material fact; (2) the representation was untrue; (3) regardless of his actual belief, the Defendant made the representation without any reasonable ground for believing it to be true; (4) the representation was made with the intent to induce Plaintiffs to rely upon it; (5) Plaintiffs were unaware of the falsity of the representation and were justified in relying on it; and (6) as a result of the reliance, Plaintiffs sustained damage.
¶67 Instruction 19 directly preceded the final negligence instruction-instruction 20-which told the jury that the Plaintiffs had the burden of proving that: (1) the Defendant was negligent; (2) the Plaintiffs’ property was damaged; (3) the Defendant’s negligence was a cause of the injury to the Plaintiffs’ property; and (4) the amount of money that will compensate the Plaintiffs for the damage to Plaintiffs’ property.
¶68 These instructions, in isolation, may correctly state the law of negligence and of negligent misrepresentation. Taken together, *165 however, and based on the record of this case, Instruction 19 hopelessly confused the jury by indicating that somehow negligent misrepresentation was a part of the negligence claim-which, of course, it was not. Instruction 19 placed before the jury an issue that was never pled or presented throughout the course of the trial. The fact that the Tripps claimed that misrepresentations led them to use the COMPLY product does not mean that their negligence claim “could also be characterized as a negligent misrepresentation claim,” as our Opinion concludes.
¶69 Moreover, as noted above, the jury had no way to render a verdict on the tort of negligent misrepresentation, which was not raised, separate from the negligence claim which was raised. From the verdict form and from the jury’s perspective, negligent misrepresentation and negligence were combined into one tort. Indeed, the jury’s confusion was manifest. From post-trial polling, according to the Tripps, a majority of the jurors stated that they could not find liability against Jeld-Wen on negligent misrepresentation since Jeld-Wen had not made any representations to the Tripps with the intent of inducing reliance in deciding to use the COMPLY product.
¶70 Tripps’ counsel did make arguments in closing with respect to negligent misrepresentation but obviously he had to do so, since the trial court improperly injected that theory into the case via Instruction 19.
¶71 I would hold that the District Court abused its discretion and erred in giving Instruction 19.1 would reverse and remand as to Issue Four.
¶72 In summary, I would hold that the District Court erred as to Issues One, Two and Four and would remand for new trial. That being the case, I would not reach Issues Three or Five.
¶73 I dissent.