No. 82-63

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

PHILIP J. MILANOVICH,

        Plaintiff and Appellant,

  -vs-

ROSEMARY J. MILANOVICH,

        Defendant and Respondent.

Appeal from: District Court of the Second Judicial District,
In and for the County of Silver Bow, The Honorable
Arnold Olsen, Judge presiding.

Counsel of Record:

    For Appellant:

        Hull & Sherlock; Jeffrey Sherlock, Helena, Montana

    For Respondent:

        Deirdre Caughlan, Butte, Montana

Submitted on Briefs: June 3, 1982

Decided: August 19, 1982

Filed: AUG 1 9 1982

_Thomas J. Kearney_
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal by the father and appellant, Philip J. Milanovich, from a judgment entered by the District Court of the Second Judicial District, Silver Bow County. This appeal deals with two main points. The first being whether the District Court holding that the father was guilty of contempt, and its imposition of sanctions on him is properly reviewable by this Court on appeal. The second point deals with whether the mother's visitation rights should have been modified or remained as they originally were.

The parties to this action were divorced on November 7, 1975. The mother was originally granted custody of the four minor children only three of whom are subject to this action, as the oldest has reached the age of majority. On May 26, 1976, the parties amended the property settlement and separation agreement, giving custody of the children to the father. This amendment also provided for visitation by the mother every summer for the month of July and on alternate holidays. Later on it was agreed by the parties that the mother would be required to give thirty days notice prior to all visitation. The parties were again before the District Court in October of 1979. At that time, the Court entered an Order granting the mother one-month's visitation and setting out her future right to have the children for the month of July each summer. This order also provided that she could have the children one weekend per month with thirty days notice and on the Christmas holiday. It further required that when the children were visiting, an itinerary along with a phone number and address where the children could be reached was to be provided to the father. Apparently, despite this very specific court order, the children were not allowed to visit their mother for Christmas 1979.

The parties again amended the property settlement in 1981. This amendment extinguished the father's alimony obligation. At the same time this amendment was filed, a letter, signed by both

parties, was filed. It stated that the mother waived her July 1981 visitation rights in return for being able to accompany the father and children on a two-week summer vacation to Canada. Written in the mother's handwriting immediately after the typed body of the letter was a sentence stating that the other two weeks visitation in July were deemed optional, and depended on her decision.

This agreed joint visitation fell through. There is conflicting testimony as to why. The mother claims that the father notified her of a change in plans, but left on vacation early and failed to leave an address where she could meet he and the children. The father's story differs. He claims the mother was informed of the change in plans and the new itinerary several months in advance. He further stated that she called him one week prior to their departure saying that the vacation plans were unacceptable and wanting to change the vistation to August.

After this joint visitation fell through, the mother's attorney, in a letter dated July 2, 1981, indicated that she would exercise her visitation rights from August 3 to September 3, 1981. The father's response was that this was inappropriate as it was not in accord with the District Court order fixing her summer rights of vistation from July 1 to July 31.

On August 15, 1981, the mother's attorney filed two motions. The first was a motion to compel visitation and the other was a motion to hold the father in contempt for not complying with the court order.

Thereafter, the father, through his attorney, filed several motions. The first was a motion seeking mental examination of the mother. The next was a motion seeking to have her visitation rights modified, the third sought appointment of an attorney for the children, and finally the last requested the court to order production of the mother's psychiatric records. The basis for the majority of these motions was the mother's poor mental health over the last few years which resulted in her hospitalization

several times.

Hearing was held in the District Court on August 21, 1981, October 23, 1981, and October 28, 1981. At these times the court heard the testimony of both parties, interviewed the children in chambers, and heard the testimony of psychologist Dr. Kenneth Welt. During the court's conversations with the children they all expressed the view that visits with their mother disrupted their lives and they would prefer not to see her. Dr. Welt also testified that the present visitation schedule caused the children anxiety that could result in psychological and emotional harm. The District Court issued its order on February 16, 1982. In that order the District Court denied all of the father's motions, found him in contempt of court, and based on that finding fined him $500 and imposed a five-day suspended sentence upon him. The District Court also awarded the mother attorney fees and $736 in costs, for lost wages and traveling and accommodation expenses incurred during the course of this action.

Several issues have been raised on appeal that require this Court's attention:

1. May this Court review the lower court's finding of contempt on appeal?

2. Did the District Court err when dealing with modification of respondent's visitation rights by failing to allow in evidence pertaining to her psychiatric condition?

3. Did the District Court err in failing to make findings as to the children's wishes?

4. Did the District Court err in failing to appoint an attorney for the children?

The first issue is the simplest to deal with and shall be disposed of first. Section 3-1-523, MCA, provides that the judgment and orders of the District Court in contempt cases are "final and conclusive," and no appeal may be taken from them. The proper avenue to use to gain review of a contempt order, by this Court, is a writ of certiorari. This Court, in the past,

has refused to consider matters of contempt on direct appeal based on section 3-1-523, MCA. O'Neill v. O'Neill (1979), ____ Mont. ____, 603 P.2d 257, 36 St.Rep. 2154; In the Matter of Gordons Estate (1981), ____ Mont. ____, 628 P.2d 1117, 38 St.Rep. 887 and will again do so in this case.

In considering the visitation rights of parents and children it must be remembered that such rights are merely incidents of custody orders, In Re the Marriage of Adamson (1981), ____ Colo. ____, 626 P.2d 739, and therefore the same principles apply to visitation as are applicable to custody.

In considering a modification of visitation rights, the court must consider the best interest of the child according to section 40-4-217(3), MCA. This Court in Firman v. Firman (1980), ____ Mont. ____, 610 P.2d 178, 37 St.Rep. 888, held that the best interest of the child is paramount in any proceeding concerning the relationship of a parent with their child.

The concept of best interest is defined by section 40-4-212, MCA, which states:

> "The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:
>
> "(1) the wishes of the child's parent or parents as to his custodian;
>
> "(2) the wishes of the child as to his custodian;
>
> "(3) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;
>
> "(4) the child's adjustment to his home, school and community; and,
>
> "(5) the mental and physical health of all individuals involved."

The District Court in making its decision in this case appears to have ignored certain of the factors. It based its decision on prior agreements and dealings between the parents, as is evidenced by its findings of fact and conclusions of law.

In rendering its decision the court is obligated to consider

the mental health of all the parties involved under section 40-4-212(5), MCA, but in the present case it did not do so as it refused to allow in psychiatric evidence pertaining to the mother, in the form of certified hospital records from Las Vegas, Nevada, and the testimony of a psychiatrist who had examined the mother in 1979. A prior decision of this Court reflects this position also. In Schiele v. Sager (1977), 174 Mont. 533, 571 P.2d 1142, the Court held that evidence which would be relevant in affecting the relationship of a child with the custodian is admissible. The District Court also failed to consider the wishes of the children as is mandated under section 40-4-212(2), MCA. Despite the court's in-chambers interview with these children, in which each child states they did not wish to visit with the mother, no findings were made as to their wishes or why they were not followed as is required under our prior decisions. Kaasa v. Kaasa (1979), 181 Mont. 18, 591 P.2d 1110; Kramer v. Kramer (1978), 177 Mont. 61, 580 P.2d 439.

The District Court also failed to consider the only professional testimony offered by either side regarding what was in the children's best interest. Dr. Kenneth Welt, a clinical psychologist in Butte, testified that the present visitation schedule could be harmful to the children's mental health due to the higher-than-normal degree of anxiety the visits caused. He recommended that visitation be modified so that it would take place in a safe environment where the children would feel close to their father and with which they had some familiarity. The court made no reference to this testimony or why it did not accept it in its judgment. It merely proceeded to render its decision based on the agreements of the parents, which is not the proper standard where children are concerned. The child's best interest is paramount in those type of cases and should be the basis for any decision, as pointed out in our discussion above.

The fourth and final issue to be addressed at this time is the District Court's denial of a motion for appointment of any

attorney for the children, in this situation, despite specific statutory authorization to do so under section 40-4-205, MCA.

The Court has set down the rule regarding court-appointed attorneys for children in a prior case where we stated:

> "[T]he rule is that appointment of counsel is only necessary when the child needs an advocate to represent his position as to the issues in dispute or to insure the development of an adequately complete record concerning the best interest of the child." In the Matter of Inquiry into JJS Youth In Need of Care (1979), 176 Mont. 202, 577 P.2d 378, 381.

In this case the children did not need anyone to represent their position as to the issues in dispute, because the District Court's in-chambers interview adequately developed their position. But in adequately and completely developing a record, in regards to the best interest of the children, an attorney is necessary in the present situation. The parties to this proceeding are embittered against one another as the District Court so accurately points out in its findings of fact no. 10 where it states, "[T]his is the most difficult case of divorce this judge has experienced." This type of situation can cause each party to present a self-serving view of the children's best interest. In such a situation, independent counsel should be appointed for the children to ensure a full and fair development of what would be in their best interest.

While this appeal was in progress, Rosemary filed through her attorney a motion in this Court to compel Philip to perform a visitation order of the District Court dated February 16, 1982. Rosemary was to have temporary custody of the minor children beginning July 1, 1982. Rosemary alleges the visitation was denied by Philip.

Exact performance of the visitation order cannot now be compelled because of the passage of time. However, the mother on this record should be considered fit to have temporary custody of her children without interference from Philip. We therefore deny the motion to compel performance by Philip, but we instruct the District Court, if the parties do not agree on immediate visita-

tion for the mother upon remittitur from this Court to so provide. We further direct the District Court to fix and allow attorney fees and costs to be paid by Philip to Rosemary incurred in connection with her motion, in addition to whatever other relief or order the District Court may make in this facet of the case.

Based on our holdings on the above issues, no other issues raised by counsel for the respective parties need be considered at this time. The judgment of the District Court, with the exception of its contempt holding is reversed and remanded for a new hearing, to be conducted in accordance with this opinion.


_____
Justice

We concur:

_____

_____

_____

_____
Justices