No. 90-135

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

MARIE WHITING AND ROBERT WHITING,
             Plaintiffs and Respondents,
    -vs-

STATE OF MONTANA,
             Defendant and Appellant,
    and

CHRIS A. PRADA, ANDREA M. PRADA, STACIE L.
PRADA, individually and STEPHANIE PRADA, and
ASHLEY PRADA, by and through their natural parents
and best friends, GREGORY C. PRADA and CHRIS
A. PRADA, and GREGORY C. PRADA, individually,
             Plaintiffs and Respondents,
    -vs-

STATE OF MONTANA,
             Defendant and Appellant.

---

APPEAL FROM:    District Court of the Second Judicial District,
                In and for the County of Silver Bow,
                The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        I. James Heckathorn; Murphy, Robinson, Heckathorn
        & Phillips, Kalispell, Montana
        Patrick M. Driscoll; Chronister, Driscoll & Moreen,
        Helena, Montana

        For Respondents:

        Donald C. Robinson; Poore, Roth & Robinson, Butte,
        Montana (Whitings and Pradas)
        Richard M. Hodges; Van Horne, Vogt, Noall & Hodges,
        Denver, Colorado (Pradas)

FILED

APR 30 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA
Filed:

Submitted on briefs:    March 14, 1991

Decided:    April 30, 1991

_____
                Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Defendant, State of Montana, appeals from a jury verdict of the Second Judicial District, Silver Bow County. The jury awarded plaintiffs, Whiting and Prada, damages for injuries sustained from a car accident caused, in part, because of an improperly marked exit ramp. The jury found that 42% of plaintiffs' injuries were attributable to Whiting's negligence and 58% were attributable to the State's negligence. We affirm.

The issues are as follows:

1) Whether the verdict is supported by sufficient evidence in the record.

2) Whether the negligence of Marie Whiting was an intervening, superseding cause of the accident and if so, whether the District Court erred by not instructing the jury on superseding cause.

3) Whether the District Court erred in not granting a new trial because of the existence of an alleged quotient verdict.

4) Whether the District Court erred in not granting a new trial because of opposing counsel's alleged misconduct.

5) Whether the District Court erred by refusing to allow evidence or to instruct on the Prada/Whiting settlement.

6) Whether the District Court erred in ruling that the State is liable for the torts of a joint tortfeasor.

7) Whether the District Court erred in the method of computing damages.

The undisputed facts are as follows:

2

Prior to August 18, 1987 (date of accident) exit ramp 127B had been under recent reconstruction. The defendant State of Montana (State) has designed certain engineering specifications which require the State to place various warning signs (Do Not Enter, Wrong Way, Keep Right) at the end of all exit ramps. The State, through its employees of the Montana Department of Highways, failed to reinstall certain required warning signs at the end of exit ramp 127B after completion of the reconstruction project. Two "Wrong Way" signs were, however, in place along each side of the exit ramp and up about 368 feet from the ramp's intersection point with Harrison Avenue.

The following sketch illustrates the scene:



On August 18, 1987, at approximately 5:15 a.m. while it was still dark, a 1976 Chevrolet van driven by Marie Whiting collided, head on, with a 1985 Oldsmobile driven by Andrea Prada in the eastbound lane of Interstate 90 (I-90) near the Harrison Avenue interchange in Butte. Marie Whiting was the sole occupant of her vehicle. Chris Prada and her daughters Andrea, Stephanie, Stacie and Ashley were occupants of the Oldsmobile. As a direct result of the collision, the occupants of the vehicles suffered extensive damages, too numerous to detail.

The disputed facts largely focus on the path taken by Whiting on entering I-90. At trial, the State contended that Whiting properly entered I-90 from Harrison Avenue via the entrance ramp. The State further contended that after travelling east in the eastbound lane, Whiting made a U-turn and began travelling west in the eastbound lane thereby causing the head-on collision completely independent of the State's negligent failure to mark the exit ramp. Conversely, the plaintiffs (Prada and Whiting parties) contend that Whiting entered I-90 via the unmarked exit ramp which allowed her to travel, without warning, west in the eastbound lane for a short distance until colliding with the Prada vehicle.

Whiting and Prada brought separate actions against the State and both parties stipulated to consolidate in order to further judicial efficiency. However, the Pradas entered into a $300,000 settlement with the Whitings' insurance carrier before they commenced their separate action against the State. On December 11, 1989 the case was tried before a twelve person jury in Butte. On

4

December 22, 1989 the jury attributed 42% negligence to Whiting, 58% negligence to the State and returned a verdict in favor of plaintiffs. The court then entered a judgment for plaintiffs' court costs and for money damages to all plaintiffs. The plaintiffs filed their cost bill on January 5, 1990. The State subsequently filed a motion to Alter or Amend the Judgment and alternative motions for Judgment Notwithstanding the Verdict and for New Trial. The parties briefed and argued these motions and on February 28, 1990 the District Court entered an Opinion and Order which denied all of the State's post-trial motions. The District Court also disallowed plaintiffs' costs as untimely filed. From the judgment and order entered thereon, this appeal was taken.

I

Evidence to Support the Jury Verdict

As we have ruled before, our review of a jury verdict is very narrow in scope. We shall not reverse the findings of a jury if they are supported by substantial credible evidence. Kitchen Krafters, Inc. v. Eastside Bank of Montana (1990), 242 Mont. 155, 789 P.2d 567. When determining whether substantial evidence exists to support the verdict, this Court must view the evidence in the light most favorable to the prevailing party. Kukuchka v. Ziemet (1985), 219 Mont. 155, 157, 710 P.2d 1361, 1363. Substantial evidence is defined as that evidence that a reasonable mind might accept as adequate to support a conclusion. Although the evidence may be inherently weak and conflicting, it may still be considered substantial. Local Union No. 400 v. Bosh (1986), 220 Mont. 304,

5

313, 715 P.2d 36, 42. Furthermore, when conflicting evidence exists, the credibility and weight given to the conflicting evidence is within the jury's province. Mountain West Farm Bureau Mutual Insurance Co. v. Girton (1985), 215 Mont. 408, 410, 697 P.2d 1362, 1363.

The State's main contention is that the evidence does not support a finding that Whiting did, in fact, use exit ramp 127B to access I-90 and that, therefore, plaintiffs have failed to prove that the State's negligence caused plaintiffs' injuries. The State argues, in its brief, that Whiting is the only witness who testified that she entered I-90 via the exit ramp. The State complains that Whiting's testimony conflicts and so it is both insubstantial, and incredible and that, therefore, the jury's verdict which is based on this testimony is not sufficiently supported. We disagree. Certainly, any inconsistencies in witness testimony go directly to the issue of credibility. However, witness credibility is generally a matter for determination by the jury under proper instructions from the court. Cottrell v. Weinheimer (1960), 137 Mont. 347, 351 P.2d 543.

The jury had an opportunity to hear substantial testimony regarding the exit ramp and the path Whiting took to enter I-90. Whiting testified that she was from out of town and unfamiliar with the Harrison Avenue Interchange and exit ramp 127B. Considerable evidence was introduced which demonstrated that this particular area of Harrison Avenue was confusing, particularly to motorists who were not familiar with the area. It is uncontested that the

6

subject exit and entrance ramps are parallel and adjacent to each other. Furthermore, one large sign hangs overhead indicating two routes of travel, "North Interstate 15" and "East Interstate 90", with a large arrow pointing in the direction of both ramps. Testimony was heard from Lieutenant Dan Butler of the Butte-Silver Bow Law Enforcement Agency, as well as from Bonnie Hancock and Don Kent who are both employees of a service station located across from the exit ramp. All three testified that each had observed motorists confused in the area and each had observed motorists turn into exit ramp 127B, and engage in a wrong way movement, in an attempt to use it as an entrance ramp to I-90. The State does not dispute the finding that it had a duty to place various warning signs at the end of the exit ramp in order to warn motorists in the event of wrong way travel on the ramp. The State also does not dispute the fact that it failed to re-install these signs upon completion of a recent reconstruction project. Nor does the State dispute that there is evidence in the record which demonstrates that the State's failure to re-install these signs created a hazardous situation. In fact, the State actually concedes that it was negligent for failing to re-install these warning signs. Rather, the State only disputes the finding that Whiting drove up exit ramp 127B and argues that it cannot be held responsible for plaintiffs' admitted injuries because Marie Whiting's testimony conflicts. The State devoted a good deal of text in its brief to point out potential conflicts in Whiting's testimony. Regarding her access to I-90, Mrs. Whiting testified that she used the second

of two ramps, which, according to the exhibits, is exit ramp 127B.

> A. [Whiting]   Well, I saw two streets running side-by-side and the first one had 15 -- they both had -- it had two signs above it, but I assumed the first one was for 15 and I turned right and began to go along a fairly straight stretch before it begins to curve onto the freeway.
>
> Q.   Now, there are two roadways that you saw to your right?
>
> A.   Yes.
>
> Q.   Did you turn on the first or the second roadway?
>
> A. In the direction I was going, I guess you could say it was the second roadway; it was the second one I came to, but it was the first one if you are talking about the closest to the freeway.

Mrs. Whiting also testified that she was on the freeway just a few seconds prior to impact.   The State asserts that this testimony is inherently incredible because, if in fact she used exit ramp 127B, the distance she would have had to travel along the freeway, to reach the point of impact, would have necessarily taken her more than a few seconds.   This is an argument that should be made to the jury, not this Court.   As we have already pointed out, any inconsistency in a witness' testimony goes to witness credibility and is a matter for the jury to consider.   We do not find any inherent incredibilities sufficient to warrant a new trial.

Mrs. Whiting also testified about overhead highway signs she observed and about a pick-up truck which distracted her as she drove the wrong way up the exit ramp.   During cross-examination, the State asked if she could recall, with specificity, out of which window or mirror she saw the pick-up truck.   The State also

8

interrogated her regarding exactly which signs she did, and which signs she did not see.

The jury, after hearing all the testimony and considering all the evidence, determined that plaintiffs' injuries were a result of the State's negligence. The credibility and weight given to the testimony of each witness is within the province of the jury, not this Court. The State cites Graham v. Rolandson (1967), 150 Mont. 270, 283, 435 P.2d 263, 270 for the proposition that whenever witness testimony is inherently impossible, or whenever the surrounding circumstances make the story highly improbable or incredible, then such evidence is not substantial and the jury verdict should be reversed. In Graham, defendant car driver struck plaintiff bicycle rider. Plaintiff sued and defendant defended with a claim of contributory negligence. To this end, defendant testified as to the path plaintiff travelled prior to impact. Defendant also stated in her deposition that she did not actually see the boy until he was under the car, following impact. Under these circumstances, we could not reconcile these conflicting statements and so we held that her testimony was so inherently incredible that it did not rise to the level of substantial credible evidence on which to predicate contributory negligence.

Turning to this case, we find nothing inherently impossible in Marie Whiting's testimony concerning the path she travelled in accessing I-90. Her testimony was that she came upon two parallel ramps and took the second ramp. From the exhibits, this would have been exit ramp 127B. Furthermore, her testimony regarding which

signs she did, or did not see, as well as when and from which window, or mirror, she saw the "distracting" pick-up did not reveal any inherent impossibilities. The State's trial tactics pinpointed possible inconsistencies in Mrs. Whiting's testimony and showed, at most, that Mrs. Whiting's recollection, regarding signs and trucks, was not perfect. However, the facts are undisputed that Mrs. Whiting was travelling, in the dark, in a confusing area with which she was unfamiliar. The fact that she cannot recall, in perfect detail, everything which preceded the accident does not mandate a reversal of the jury verdict.

We hold that substantial evidence exists in the record to support the jury's verdict. Accordingly, we will not disturb the jury's determination in this case because it is supported by substantial credible evidence.


II

Superseding Cause

The court instructed the jury that if the jury found that Whiting failed to heed the warning of two "Wrong Way" signs, then such a failure necessarily amounted to negligence as a matter of law. The State argues that Whiting's negligence was unforeseeable and amounted to an intervening, superseding cause which, necessarily, served to cut off all liability due to the State's negligent failure to re-install certain warning signs at the end of the exit ramp.

A superseding, intervening event is an unforeseeable event

10

that occurs after the defendant's original act of negligence. Its presence will generally serve to cut off defendant's liability. Kitchen Krafters, 789 P.2d at 576. The record shows that engineering specifications mandated that the State install multiple, or redundant, warning signs at the end of the subject exit ramp. The State created a risk by failing to re-install these signs at the subject exit ramp. The State, in fact, acknowledges that it was negligent in not doing so. The risk created by the State's negligence includes the intervention of the foreseeable negligence of others. See Sizemore v. Montana Power Company (Mont. 1990), 803 P.2d 629, 47 St. Rep. 2252. Thus, the question we must now answer is: Given the facts presented, was Mrs. Whiting's negligence reasonably foreseeable?

Exit ramp 127B and its companion entrance ramp run parallel and are adjacent to each other. Both ramps are easily and equally accessible from Harrison Avenue. At the Harrison interchange, there are no signs which serve to distinguish one from the other. Rather, there hangs over both ramps only one large sign, on which is printed two highway routes and one large arrow pointing in the direction of, and up, both adjacent ramps. A single set of "Wrong Way" signs are on the exit ramp and up 368 feet from Harrison Ave.

On the morning of the accident, it was still dark and Mrs. Whiting, who was unfamiliar with the area, drove up the exit ramp, past the single set of "Wrong Way" signs and crashed into co-plaintiff's vehicle. Given this set of facts, which most nearly describes a trap situation, we find it most difficult to imagine

11

how the State can claim that Whiting's negligence was not foreseeable. Further, the jury was properly instructed on foreseeability and still found that the State was negligent. Instruction No. 24 states: "A person who cannot reasonably foresee danger of injury from his conduct is not negligent. Foreseeability is measured on a scale of reasonableness. It is not measured abstractly." Considerable evidence was offered which demonstrated that redundant signs are specified on the assumption that a highly dangerous area will be encountered by both motorists who are unfamiliar with the given area and who become momentarily distracted, for whatever reason, and miss the first warning they encounter. The assumption that a motorist may become distracted long enough to miss a single set of warning signs, is reasonable. Certainly, the very purpose of the State's specifications, which called for redundant signs, was to prevent the exact kind of accident which occurred here. The District Court, as well as the jury, considered all the evidence and determined Whiting's negligence was reasonably foreseeable and so not a superseding cause of plaintiffs' injuries. As such, the District Court refused to offer instructions on superseding cause since all instructions must be applicable to the evidence. We find no error since the evidence does not show the existence of a superseding cause.

### III

Quotient Verdict

The State moved the District Court to grant a new trial,

pursuant to § 25-11-102(2), MCA, on the basis that the jury improperly resorted to the determination of chance, and thereby arrived at a quotient verdict, in reaching its final verdict against the State. Following a post-trial hearing, the District Court found that, although an averaging process was used, none of the jurors agreed to be bound by the process and denied the State's motion for a new trial. The State now appeals this ruling.

The decision to grant a new trial is within the sound discretion of the trial judge and will not be overturned absent a manifest abuse of discretion. Zeke's Distributing Co. v. Brown-Forman Corp. (1989), 239 Mont. 272, 779 P.2d 908. The question of whether or not the jury agreed to be bound by a quotient verdict process is a question of fact. Stanhope v. Lawrence (1990), 241 Mont. 468, 471, 787 P.2d 1226, 1228. We will not set aside the trial judge's findings if supported by substantial credible evidence. Stanhope at 471, 787 P.2d at 1228.

A quotient verdict, pursuant to § 25-11-102, MCA, constitutes grounds for a new trial. Stanhope at 472, 787 P.2d at 1229. Based on this Court's discussion in Stanhope, Thomas v. Whiteside (1966), 148 Mont. 394, 399-400, 421 P.2d 449, 452, and Great Northern Ry. Co. v. Benjamin (1915), 51 Mont. 167, 172, 149 P. 968, 969, there are two elements necessary to create an invalid quotient verdict: (1) The jurors must agree in advance that the result of the quotient shall be their verdict; and (2) they must carry the agreement into effect. The court found that, although an averaging process was used, none of the jurors agreed to be bound by the

13

process. The question we are now faced with is: Was the evidence sufficiently substantial to support the trial judge's findings?

Since the evidence is in the form of affidavits, let us first consider, in part, the affidavit of juror James Hendrickson:

> Most of the other jurors had actively participated in deliberations and many different figures were suggested. Finally, it was decided that in order to get the discussion organized we should see if we could arrive at some proposed numbers so that we could have something to start with. Consequently, juror Kathleen Lawson asked everyone, including juror Salazar, to write down their proposed verdict figures, which they did. Juror Lawson then determined what the average of those figures were [sic].

> 4. After the proposed figures were determined in this manner we went back over all of the figures and discussed them again, some of them at length. We also went back and looked at the damages summaries that were exhibits. As a result, we changed the verdict award from the figure that had been proposed by the averaging process, in several instances.

> . . .

> 6. At no time did the jury agree or commit in advance that the averaging process would constitute our verdict. Rather, the averaging process was just a way to get proposed figures before the entire jury as a starting point for discussion. As described, considerable deliberations and changes did occur after the average figures were calculated.

Juror Kathleen Lawson signed a similar affidavit. Jurors Chris Cotton, Eugene Chouinard, Ken Schneider, Carol Kruger, and Beverly Shipley each signed an affidavit which is in accord with the affidavits of jurors Lawson and Hendrickson. These affidavits further stated:

> 3. The averaging process was used by the jury only to obtain a starting point for discussion. At no time did we agree in advance that the averaging process would constitute our final verdict. The way the averaging process was used is correctly described in the affidavits

14

of Mr. Hendrickson and Ms. Lawson.

Juror James Leary signed two affidavits. The first, dated February 14, 1990, was a form affidavit supplied by the State which stated:

> I, _____, being of lawful age and first being duly sworn, depose and state:
>
> 1. That I served on the jury that heard the Marie Whiting and Prada Family, plaintiffs, v. State of Montana, defendant, case in the Second Judicial District court, Silver Bow County, in December of 1989.
>
> 2. That the jury reached its verdict in that case in the following manner. We decided to go by the average of the numbers for liability and the amount of damages that would be submitted by each juror. Each juror then wrote down the numbers for liability and damages that she or he felt were appropriate. One of the jurors then averaged the numbers for the liability and damages. The results were submitted to the court on the verdict form.

The very next day, on February 15, 1990, juror Leary signed a second affidavit which stated:

> 2. On February 14, 1990, I signed an affidavit that was presented to me by . . . , a paralegal/investigator for the State of Montana . . . The affidavit had already been prepared and typed. I had never given a statement to anyone representing the State of Montana prior to the time the affidavit was presented for my signature. The investigator did not ask me about whether further discussions occurred following the averaging process or whether the jury had agreed in advanced [sic] that the averaging process would constitute our final verdict.
>
> . . .
>
> 4. The averaging process was used by the jury only to obtain a starting point for discussion. At no time did we agree in advance that the averaging process would constitute our final verdict. The way the averaging process was used is correctly described in the affidavits of Mr. Hendrickson and Ms. Lawson.

The State also introduced two other affidavits, three in all, which were identical to the first one signed by juror Leary on

15

February 14, 1990. These two affidavits were signed by jurors Michael Downes and Ruth Elliot.

The evidence, which is in the form of affidavits, conflicts. It is within the discretion of the trial court, as the trier of fact, to weigh and choose between the conflicting testimony contained in the affidavits. Section 26-1-302, MCA and Stanhope at 479, 787 P.2d at 1233. We have read all the affidavits and have considered all the evidence, as did the trial court. We hold that the trial court's finding, that the jury did not bind its verdict with a quotient, was supported by substantial credible evidence. We further hold that the trial court did not abuse its discretion by refusing to grant a new trial.

IV

Counsel Misconduct

The State contends that plaintiffs' counsel engaged in misconduct warranting a new trial. The State alleges that, during closing argument, opposing counsel addressed the jury by name and improperly appealed to the passion and prejudice of the jury which constitutes grounds for a new trial. Allegedly improper argument requires reversal of a verdict "only when prejudice has resulted that prevents a fair trial." Krueger v. General Motors Corp. (1989), 240 Mont. 266, 280, 783 P.2d 1340, 1349. Unless a level of prejudice can be shown that manifestly precludes a fair trial, then there is no reversible error. Nelson v. Hartman (1982), 199 Mont. 295, 301, 648 P.2d 1176, 1179.

16

Upon reviewing the record, we find that the State failed to object to the alleged improper closing comments of plaintiffs' counsel. Failure to object to alleged error at trial precludes an appellant from raising that issue on appeal. Matter of B.L.O. (1984), 213 Mont. 164, 169, 689 P.2d 1246, 1249. Therefore, with no more, we hold that the State's appeal on this issue lacks merit and its request for a new trial was properly denied by the District Court.

V

Prada/Whiting Settlement

As already stated, before the Pradas commenced their separate action against the State, they entered into a $300,000 settlement with the Whitings' insurance carrier. The plaintiffs jointly moved for an order in limine, to allow the court to deduct the amount of the settlement from any final award received by the Pradas, but to exclude the fact of the settlement, and the settlement amount, from the jury, on the grounds that such information would lead to substantial confusion and prejudice. After a hearing, the court granted the motion and re-affirmed the order in its post-trial Opinion and Order. The State now contends that the jury should have been informed of this settlement. The State's contention is without merit.

We have already commented on the preferable method to handle questions of settling parties. In Azure v. City of Billings (1979), 182 Mont. 234, 244-45, 596 P.2d 460, 466 we held:

> The preferable method is to let the jury find total damages without disclosing the amount of the settlement

17

to the jury, and thereafter the court, upon request of counsel, must deduct the amount of the settlement from the amount of the jury verdict.

This was the exact method used by the District Court. If the jury is instructed and informed as to the facts of a previous settlement with a settling party, which is the method the State now urges upon this Court, confusion among the jury is likely and substantial prejudice may result to both plaintiff and defendant. We find no error. The District Court, in this regard, is affirmed.

VI

Tort Immunity

The State wishes to avoid the effects of joint and several liability by claiming that the State cannot be jointly liable for the 42% negligence of Whiting because she is not an officer or employee of the State. Article II, Section 18 of the Montana Constitution and § 2-9-102, MCA, plainly provides for the general rule that the State shall have no immunity for its torts, unless provided otherwise by the legislature. The State has failed to present any statutory or other theory under which it is entitled to immunity in this case. The District Court properly denied the State's motion to alter or amend the judgment on these grounds.

VII

Dollar Offset

The jury awarded the Prada family combined damages of $1,680,000 and attributed negligence: 0% to Prada, 42% to Whiting,

18

58% to the State. The District Court, pursuant to § 27-1-703, MCA, ruled that the State was jointly and severally liable for these damages, less a $300,000 offset (to account for the Whiting settlement), and entered judgment for Pradas in the amount of $1,380,000. The State contends that it should only be liable for 58% of the combined Prada award, or just $974,400, arguing that the 1987 amendment to § 27-1-703, MCA, dealing with joint and several liability among joint tortfeasors, wiped out the dollar offset rule as set out in the case of State ex rel. Deere v. District Court (1986), 224 Mont. 384, 730 P.2d 396. Stated differently, the State contends that the District Court erred when it deducted only $300,000 (dollar offset), rather than deducting the award by 42%, or $705,600 (percent credit equal to Whiting's negligence). Therefore, the question presented is what effect should the settlement by the settling tortfeasor have upon the liability to the plaintiff of the non-settling tortfeasor.

In Deere, ruling under § 27-1-703, MCA (1985), this Court decided this very same issue saying:

> [T]he claim of the plaintiff against the remaining tortfeasors is to be reduced by a dollar credit in the amount of consideration paid by the settling tortfeasor, and not by a percentage amount proportional to the degree of fault of the settling tortfeasor.

Deere at 386, 730 P.2d at 398, citing Black v. Martin (1930), 88 Mont. 256, 265, 292 P. 577, 580; and Azure v. City of Billings (1979), 182 Mont. 234, 596 P.2d 460. In Deere, plaintiff was injured when a bulldozer, manufactured by Deere & Co. and driven by an employee of Wade's Backhoe, backed into him. Before judgment

19

was entered by the district court, plaintiff settled his claim against Deere for $25,000. Wade, the non-settling concurrent tortfeasor sought to bring Deere, the settling concurrent tortfeasor, back into the litigation by means of a third party complaint for contribution or indemnity. This Court held that, pursuant to § 27-1-703, MCA (1985), a joint tortfeasor, who has settled before judgment is entered in the district court, is not subject to claims of a non-settling joint tortfeasor for contribution and that, therefore, Deere's settlement with plaintiff prevented contribution claims against Deere. Deere at 386, 730 P.2d at 398. This is because contribution, according to § 27-1-703, MCA (1985), "shall be proportional to the liability of the parties against whom recovery is allowed." We reasoned that this language (unchanged by the 1987 amendments) meant that no right of contribution exists from a settling tortfeasor because a settling tortfeasor is completely exonerated from any further liability for plaintiff's damages which precludes any further recovery from a settling tortfeasor.

Having reached that conclusion, we next determined the effect the settlement by Deere had upon Wade's liability to the plaintiff. Counsel for Wade argued that even though Deere is no longer liable to plaintiff by reason of a settlement, it may still be liable for contribution to Wade, if Deere's proportional fault of plaintiff's judgment exceeds $25,000. In short, Wade proposed a percent credit rule to calculate damages, while Deere proposed a dollar offset rule. We held that plaintiff's recovery is diminished by a dollar

20

offset, not percent, in the amount paid or to be paid by the settling concurrent tortfeasor.

We rejected the percent credit rule in favor of the long-standing dollar offset rule by stating:

> In reality, our decision on this issue is hinged upon our earlier interpretation of the statute herein that no right of contribution exists from a settling tortfeasor.

Deere at 396, 730 P.2d at 404.

> [W]e determine the better practice is to follow what has long been the standard in Montana, that the plaintiff's recovery is diminished pro tanto, that is, given dollar credit based on the consideration paid or to be paid by the settling concurrent tortfeasor. Such a holding encourages compromise, lends finality to such compromises, and keeps in force a practice which the legislature has not been shown to have intended to change.

Deere at 397, 730 P.2d at 405. Such was the state of the law after Deere. We now consider our holding in Deere in light of the 1987 amendments to § 27-1-703, MCA.

Section 27-1-703, MCA (1987) provides:

> **Multiple defendants -- determination of liability.**
> (1) Except as provided in subsection (2) and (3), whenever the negligence of any party in any action is an issue, each party against whom recovery may be allowed is jointly and severally liable for the amount that may be awarded to the claimant but has the right of contribution from any other person whose negligence may have contributed as a proximate cause to the injury complained of.
>
> (2) Any party whose negligence is determined to be 50% or less of the combined negligence of all persons described in subsection (4) is severally liable only and is responsible only for the amount of negligence attributable to him, except as provided in subsection (3). The remaining parties are jointly and severally liable for the total less the amount attributable to the claimant.
>
> (3) A party may be jointly liable for all damages

21

caused by the negligence of another if both acted in concert in contributing to the claimant's damages or if one party acted as an agent of the other.

(4) On motion of any party against whom a claim is asserted for negligence resulting in death or injury to person or property, any other person whose negligence may have contributed as a proximate cause to the injury complained of may be joined as an additional party to the action. For purposes of determining the percentage of liability attributable to each party whose action contributed to the injury complained of, the trier of fact shall consider the negligence of the claimant, injured person, defendants, third party defendants, persons released from liability by the claimant, persons immune from liability to the claimant, and any other persons who have a defense against the claimant. The trier of fact shall apportion the percentage of negligence of all such persons. However, on attributing negligence among persons, the trier of fact may not consider or determine any amount of negligence on the part of any injured person's employer or coemployee to the extent that such employer or coemployee has tort immunity under the Workers' Compensation Act or the Occupational Disease Act of this state, of any other state, or of the federal government. Contribution shall be proportional to the liability of the parties against whom recovery is allowed. Nothing contained in this section shall make any party indispensable pursuant to Rule 19, Montana Rules of Civil Procedure.

(5) If for any reason all or part of the contribution from a party liable for contribution cannot be obtained, each of the other parties shall contribute a proportional part of the unpaid portion of the noncontributing party's share and may obtain judgment in a pending or subsequent action for contribution from the noncontributing party. A party found to be 50% or less negligent for the injury complained of is liable for contribution under this section only up to the percentage of negligence attributable to him. (The emphasis supplied indicates the language added to § 27-1-703, MCA by the 1987 amendment.)

According to paragraphs (1), (2) and (3), read together, the State is jointly and severally liable for the total amount that was awarded to Prada, although the State has a right of contribution from other parties under certain circumstances. Paragraph (4)

22

contains key language regarding the State's right of contribution, which was also contained in the 1985 version of the section: "Contribution shall be proportional to the liability of the parties against whom recovery is allowed." (Emphasis added.) In Deere, we concluded that this very same language required the necessary result that "no right of contribution" exists from a settling tortfeasor. Deere at 393, 730 P.2d at 402. The 1987 amendments left this crucial language intact. As a result, there is no basis for changing our holding in Deere on this issue.

We therefore conclude that our holding in Deere controls in the present case. As such, we hold that Whiting, the joint tortfeasor in this case, who settled with the Pradas before judgment on the claim was entered in the District Court, is not subject to any claim for contribution from the State, the non-settling tortfeasor.

Our next task is to determine how much credit is due on the judgment against the State because of the Whiting settlement, which was in the amount of $300,000. The plaintiffs contend that the credit due should be limited to the $300,000 paid, whereas the State contends that 42% of the total judgment, or $705,600, should be deducted.

According to subsection (2) of § 27-1-703, MCA, those who are 50% or less negligent (as determined by subsection (4)) are severally liable for their own proportional fault and those who are 51% or more negligent are jointly and severally liable for the total less the amount attributable to the claimant. We now must

23

determine the meaning of the phrase: "jointly and severally liable for the total less the amount attributable to the claimant", since the State claims that this language means that a tortfeasor, whose negligence is 51% or more, is jointly liable for only its proportional fault of the damage award. Subsection (2) of the statute clearly states that such liability shall extend to the total (of the award) "less the amount attributable to the claimant." The statute, as amended, clearly assesses joint and several liability to the State, the non-settling concurrent tortfeasor whose negligence is 58%, for all of the Prada award rather than just 58% of the award. Therefore, a plain reading of the statute lends no support to the State's contentions. Policy considerations, as noted in Deere, warrant our adoption of the dollar offset rule. Under the percent credit rule, a plaintiff will never recover the full amount of any judgment against the non-settling tortfeasor if he settled for an amount less than the amount of the judgment attributable to the fault of the settling tortfeasor. This, in our estimation, is not adequate protection for the plaintiff. The dollar credit rule, on the other hand, is more effective in encouraging compromise and settlement, does not lead to inequities, and is a method which the legislature has not shown an intention to change. In the case of a jointly liable non-settling tortfeasor, the dollar offset rule assures plaintiff of recovering the entire amount of any judgment rendered--such is the protection of joint and several liability. We are aware of the burden which the dollar credit rule places on a jointly liable non-

settling tortfeasor—namely, to insure plaintiff against his own poor judgment when settling for less than he is entitled.

We conclude this is an appropriate result in encouraging fair and just settlements. The compelling reasons which we described in Deere in favor of the dollar offset rule are still applicable. Furthermore, the linchpin of this holding was our reasoning that a right of contribution does not exist as to a settling tortfeasor. This linchpin still exists. We therefore hold that the judgment of the non-contributorily negligent Pradas against the State is to be reduced by a dollar credit in the amount of $300,000 which was paid by Whiting, the settling tortfeasor, and not by $705,600 which equals the 42% of the Prada judgment.

The District Court correctly applied the precepts set out in Deere and the provisions of § 27-1-703, MCA as amended in 1987, in ruling that the State was jointly and severally liable for Pradas' damages, less a $300,000 offset for the Whiting settlement. The judgment of the District Court is hereby affirmed.

John Conway Harrison
Justice

We concur:

J. A. Turnage
Chief Justice

William E. Hunt, Sr.

_____

_____
Karla M. Gray
Justices

26