No. 92-592

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

WANDA D. McDOWELL,

     Petitioner and Appellant,

  -v-

RANDY J. McDOWELL,

     Respondent and Respondent.

APPEAL FROM:  District Court of the Eleventh Judicial District,
               In and for the County of Flathead,
               The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          R. M. Kehew, Law Offices of R. M. Kehew, Kalispell,
          Montana

     For Respondent:

          Robert B. Allison, Kalispell, Montana

Submitted on Briefs:  September 16, 1993

Decided:  February 1, 1994

Filed:  FILED
FEB 01 1994
*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from the Eleventh Judicial District, Flathead County, modifying the custody of two minor children. We affirm.

While the appellant charges thirteen different errors made by the court, we consider the following question which includes consideration of all issues raised:

Did the District Court abuse its discretion in modifying the custody of the two minor McDowell children?

The marriage of Wanda and Randy McDowell was dissolved in 1986, after five years of marriage. Two children, a girl and a boy, were born to the couple. At the time of the dissolution, Wanda McDowell was awarded custody and Randy was granted reasonable rights of visitation. At the time of the hearing on modification, the children were ages 7 and 9. Wanda has worked to a limited degree since 1980. Randy has been employed as a custodian and maintenance man for Flathead County for over eleven years.

Both Wanda and Randy re-married other people. Wanda married Jerry Harris and moved from Flathead County to Trego, Montana, in Lincoln County. Wanda and Jerry Harris separated in November of 1990, and she returned to Flathead County. Wanda testified that her children had told her that Jerry had sexually abused them. Wanda testified as to her belief that while she was in the hospital having the couple's first child, Jerry involved both of the McDowell children in satanic rituals.

In January of 1991, Wanda sought counseling for the children

based upon her belief that Jerry had sexually abused her children. The first counselor saw the children from January until June of 1991. In June, after indication that the children had been ritually abused, Wanda took the children to see a Missoula counselor. This counseling lasted several sessions at which time Wanda was advised by the counselor that she should find a facility which had special accommodations for children. Wanda then took her son to Rivendell Treatment Center in Butte. Wanda testified that she was dissatisfied with the treatment at Rivendell and because her son was expressing suicidal thoughts, she had him admitted to Shodair Hospital.

Wanda testified that she removed her son from Shodair Hospital after a short time because she believed that Hospital personnel had lied to her with regard to the Hospital's expertise in dealing with ritually abused children. Shodair personnel testified that Wanda should not have removed her son from Shodair Hospital and such removal constituted a significant risk because of his predisposition towards suicide. Notwithstanding this advice from the personnel at Shodair Hospital, Wanda removed her son from the Hospital and then took him to Burley, Idaho where she had located a journalist whom she believed to be an expert in ritually abused children.

Before her trip to Idaho, Wanda sent Randy a letter saying that she had to disappear with the children for several years in order to protect them. It was at this point, in October of 1991, that Randy filed a Motion for Modification of Custody in the Montana District Court.

3

Randy received a court order dated October 9, 1991 awarding him temporary custody of his children. He was subsequently able to locate Wanda and the children in Idaho. He obtained the help of Idaho authorities and took physical custody of his children on October 15, 1991. Immediately upon assuming custody of the children, Randy returned them to Shodair Hospital where they remained for treatment until January of 1992. During this stay, the children were visited each week by both parents.

A modification hearing was held on June 30 and July 1, 1992. On August 20, 1992 the District Court entered its Findings of Fact and Conclusions of Law and Order awarding custody of the children to Randy with supervised visitation for Wanda. Wanda appeals that order.

Did the District Court abuse its discretion in modifying the custody of the two minor McDowell children?

Wanda asserts that the court erroneously modified the custody of the McDowell children. She claims that she has been unable to see the children whom she raised for nine years. Randy argues that Wanda took the children out of the state in direct contravention to the custody order and that the safety and well-being of his children required an immediate change in their physical custody because of possible abuse by their step-father.

Our custody modification statute provides that when the child's present environment endangers seriously his or her "physical, mental, moral, or emotional health" it may "in its discretion" modify a prior custody arrangement. Section 40-4-219(a) and (c), MCA. Further, the district courts have discretion

4

to modify custody when the custodial parent changes or intends to change the child's state of residence. Section 40-4-219(f), MCA.

In any custody determination, we will look to see if a district court's findings are clearly erroneous. In re Marriage of Klose (1991), 243 Mont. 211, 793 P.2d 1311. And, unless the court has abused its discretion, we will not overturn a district court's ruling. In re Marriage of Rolfe (1985), 216 Mont. 39, 699 P.2d 79. The testimony presented during the modification hearing was extensive. That testimony is mirrored specifically in the District Court's findings. There is substantial evidence in the record to establish that the children here suffered forms of sexual abuse and possibly satanic ritualistic abuse.

The District Court could not determine exactly what had happened to the children and although the transcript of the hearing contains graphic detail, many questions remain unanswered as to the extent of the abuse. The court did find that Wanda's efforts to obtain effective treatment, and to help her children, were well intentioned, but erratic to the point they endangered the children, particularly the boy. The court also found that the children's real father, Randy, had been passive in his approach to the relationship he had with his children. The court determined that when the children were taken out of state because of possible harm from their step-father, Randy appropriately sought to protect his children.

The District Court found that there was a significant possibility that Wanda had participated in the abuse, and that she may have told the children they were required to be involved in the

5

satanic cult. The record before us does not contain evidence to support that finding. On this aspect, the court relied upon reports from Shodair Hospital which are not a part of this record. Appellant argues that such records should never have been considered by the court without appropriate authentication. We cannot consider this argument because the appellant failed to object to the records when they were given to the District Court and were considered by the court. If a party does not object to evidence at the lower court level, the party cannot object to it on appeal. Whiting v. State (1991), 248 Mont. 207, 810 P.2d 1177.

Wanda argues that the court did not consider the children's preference for custodial parent. The record reveals that the court did not interview the children. While district courts are required to consider the best interests of the children in determining a custody arrangement, this Court has determined that a district court is not required to interview the children in every case. In re Marriage of Susen (1990), 242 Mont. 10, 788 P.2d 332. In the Susen case, the wishes of the children were specifically known. In the case before us no testimony was obtained from the children so we do not know their views regarding custody. While an interview with the children would have been preferable, the record as hereafter summarized establishes that two counselors and other qualified persons testified regarding the care and custody of the children, including the possibility of danger to them. In view of the facts as determined by the court, which clearly demonstrated that the best interests of the children required a change in custody, we conclude the court did not err in failing to interview

6

the children.

Wanda moved for the appointment of an attorney to represent the children. The father questioned the need for such an appointment. The District Court did not rule on the motion and did not express a reason for not making an appointment in its Findings of Fact, Conclusions of Law and Order dated August 20, 1992. Section 40-4-205, MCA (1991), in effect on the date of the order, provided as follows:

> **40-4-205. Representation of child.** The court may appoint an attorney to represent the interests of a minor dependent child with respect to his support, custody, and visitation. The county attorney and the deputy county attorneys, if any, may not be appointed for this purpose. The court shall enter an order for costs and fees in favor of the child's attorney. The order shall be made against either or both parents, except that if the responsible party is indigent, the costs shall be waived.

This code section was interpreted in the custody case of Milanovich v. Milanovich (1982), 200 Mont. 83, 655 P.2d 959. In interpreting the foregoing code section, in Milanovich we stated the rule regarding appointment of attorneys for children as follows:

> "[T]he rule is that appointment of counsel is only necessary when the child needs an advocate to represent his position as to the issues in dispute or to insure the development of an adequately complete record concerning the best interests of the child."

Milanovich, 200 Mont. at 89, 655 P.2d at 962; quoting In the Matter of Inquiry into JJS Youth In Need of Care (1979), 176 Mont. 202, 577 P.2d 378, 381. In accordance with the Milanovich case, we have carefully reviewed the record in this case to determine if an attorney was required to represent the position of the children on the issues in dispute, or to ensure the development of an

7

adequately complete record concerning their best interests. Following are key parts of the findings and conclusions of the District Court:

## FINDINGS OF FACT

. . .

6. Several witnesses, including counselors from Shodair and the parties themselves, indicated that the children had been sexually abused and molested, probably by Mr. Harris. This abuse occurred during the mid and later part of 1990 as best can be determined . . .

7. References and innuendoes during the trial indicate that Mr. Harris may have been involved with a satanic cult or participated in "cultist" activities and rituals. Wanda firmly believes that the children were molested and abused by Mr. Harris in conjunction with those rituals. Randy is not so certain of the ritualistic nature of the abuse, but believes rather firmly, based upon information that he has, that, at the very least, the children were sexually abused by Mr. Harris. . . .

8. In January of 1991 Wanda contacted Carol Lee, a counselor in Columbia Falls, regarding the children, and Ms. Lee did counsel the children over a period of time from January through June of 1991. During the latter part of that counseling, certain references were made to ritual abuse. Lee testified that she would have been willing, and felt competent, to continue counseling with the children but that Wanda discontinued that counseling in June when she took the children to see James Ramsey, a licensed professional counselor . . .

9. Wanda terminated the counseling with Mr. Ramsey, but, in August or September of that year, J. began exhibiting very bizarre, self-destructive behavior. He expressed a desire to commit suicide. As a consequence, Wanda took him to Rivendale [sic], a children's psychiatric hospital in Butte. She decided that she did not like that facility so she took him to Shodair Children's Hospital for treatment and evaluation. However, on September 26, 1991, Wanda removed J. from Shodair against medical advice.

. . .

11. . . . It should be noted that J. was potentially suicidal prior to his admission to Shodair and upon his

8

removal from that facility by Wanda. Lisa Shipley and Sharon Center, both therapists at Shodair, felt that removing J. from Shodair under those circumstances constituted medical abuse and was potentially a serious endangerment to J. . . . .

. . .

13. Shodair determined, upon evaluating the McDowell children [after their return by Randy to Shodair in October, 1991], that it would be best if both children remained at Shodair and they did remain there from mid-October until late January 1992. During the three months that they were at Shodair, the children had weekly visits and family sessions with both parents. The therapists testified that the family sessions between the children, Randy and Marie, were appropriate and appeared to be helpful to the children. On the other hand, the weekly family sessions with Wanda were frequently inappropriate in that Wanda interjected topics into the conversation that were considered improper by the therapists . . .

14. The therapists from Shodair felt strongly that Randy and Marie were in a better position to provide an appropriate, nurturing and therapeutic home environment for the children than Wanda was.

. . .

16. The children were discharged in January, 1992 and have resided with Randy McDowell since that time. They are enrolled in school in Smith Valley School, a rural school just a few miles west of Kalispell. Both children are progressing adequately in school and appear to be doing well and have adjusted to that environment, as well as to the McDowell family home.

17. Dr. Matthew Bosley, a Kalispell pediatrician, testified that he has treated the McDowell children on numerous occasions over the last several years. He testified that the children, particularly J., were generally hyperactive and ill-behaved when they were in their mother's custody, and that he had noted an extreme change in their behavior from prior to their treatment at Shodair. Dr. Bosley believes that Randy and Marie are appropriate parents and that the children seem to have improved since the change of custody.

. . .

CONCLUSIONS OF LAW

. . .

9

2. The erratic behavior and inconsistent treatment of the children by Wanda, the removal of the children from the state of Montana and from Shodair without Court approval and against medical advice . . . constitute a serious physical, mental, moral and emotional endangerment to the children.

3. The apparent improvement of the children physically and emotionally since the temporary change of custody in October of 1991 makes it clear that any trauma that might have been caused to the children by virtue of such change of custody has been far outweighed by the benefits that the children have received from that change.

4. Based upon the above considerations and the Findings of Fact, the Court concludes that the Respondent, Randy J. McDowell, should be awarded the custody of the minor children.

We have reviewed the extensive testimony on the part of various experts with regard to the children and their best interests as well as the testimony of the parents. We conclude there is substantial and largely uncontradicted evidence to support the above-quoted Findings of Fact and Conclusions as well as the remaining Findings of Fact and Conclusions of the District Court. Applying the Milanovich tests, we conclude that the record demonstrates the children did not need an advocate to represent their position as to the issues in dispute, as those issues were carefully and completely presented. Next, we conclude that the record without question demonstrates that there was the development of an adequately complete record concerning the best interests of the children. We hold that the District Court did not err in its failure to appoint counsel for the children.

Our attention has been directed to In the Matter of Gullette (1977), 173 Mont. 132, 566 P.2d 396. Gullette was a contested guardianship proceeding, rather than a proceeding under the

10

termination of marriage and child custody provisions as involved in the present case. However, we carefully consider Gullette because of the serious nature of the alleged abuse and because of the legal questions this case raises in terms of future application. The alleged abuse here was ritual sexual abuse, now a felony in Montana. Section 45-5-627, MCA (1993).

In Gullette, while discussing the need for counsel to represent children in a contested guardianship case, this Court held as follows:

> We find the reasoning of the Oregon court in In the Matter of D. to be the most workable solution to the problem presented and hold that where custody is in serious dispute, the court shall appoint independent counsel for the child or make a finding stating the reasons that such appointment was unnecessary. [Cases cited.]

Gullette, 173 Mont. 140, 566 P.2d at 400.

As pointed out in Gullette, there is no statutory provision with regard to the appointment of counsel in contested guardianship cases. The Court extensively discussed the need for counsel in those proceedings as well as in serious marital custody cases. We recognize the contradiction between our current holding and the foregoing holding in Gullette which states that the court shall appoint independent counsel or make a finding stating the reasons the appointment was unnecessary. The court did neither in the present case.

The requirement of Gullette extends beyond the statutory requirements of § 40-4-205, MCA. We also point out that the Milanovich case was subsequent in date to Gullette. In addition, § 40-4-205, MCA, was amended in 1993 without any change in the

11

first sentence which states that "the court may appoint an attorney to represent the interests of a minor dependent child with respect to the child's support, custody, and visitation." In order to eliminate the contradictions between Gullette and Milanovich, we expressly overrule the holding in Gullette.

For assistance in future cases, however, we emphasize again that the alleged abuse to the children in this case was severe and involved allegations of ritual sexual abuse. In 1993, Montana enacted § 45-5-627, MCA, as a criminal felony statute which provides that a person commits the offense of ritual abuse of a minor if the person engages in various conduct such as sexual intercourse, mutilation or sacrifice of animals and other specifically defined conduct. In consideration of future cases of alleged ritual abuse, we emphasize that the parties and courts should carefully consider the possible need for separate counsel to represent the children as well as the possibility of appointment of a guardian ad litem.

We conclude that the record contains substantial and extensive evidence to support the conclusions of the District Court with regard to custody. We hold the District Court did not abuse its discretion in changing custody of the children.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

12

John Conway Harrison

William E. Hunt Sr.

Troy J. Trieweiler

_(signature)_

Karla M. Gray

Justices

February 1, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

R. M. Kehew
Law Offices of R.M. Kehew
P.O. Box 5427
Kalispell, MT  59903-5427

Robert B. Allison
Attorney at Law
130-5th St. E.
Kalispell, MT  59901

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy